[No. A115079. First Dist., Div. Five. Aug. 23, 2007.]

GLORIA PETERSON, Plaintiff and Appellant, v.
JOHN CRANE, INC., Defendant and Respondent.

**COUNSEL**

Brayton * Purcell, Alan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy and Mary E. Pougiales for Plaintiff and Appellant.

Hassard Bonnington, Philip S. Ward and Barry N. Endick for Defendant and Respondent.

**OPINION**

**NEEDHAM, J.**—Gloria Peterson, individually, and as successor in interest to her deceased husband, and as his legal heir, appeals from an adverse

judgment entered after a jury trial. She contends that the court erred in awarding expert witness fees to the respondent under Code of Civil Procedure section 998,[1] on the grounds that (1) respondent's section 998 offer was invalid because Peterson's prosecution of claims in multiple legal capacities made her "multiple plaintiffs" for purposes of determining the validity of a settlement offer under section 998; and (2) the court did not consider the parties' relative economic resources in deciding whether the cost award was reasonable. We will affirm the judgment.

## I. *FACTS AND PROCEDURAL HISTORY*

Gloria Peterson and her husband, John, filed a lawsuit in April 1999 alleging that John's asbestosis and lung cancer were asbestos related.[2] They sued a number of manufacturers, suppliers, and users of asbestos products for his injuries, under legal theories including negligence, intentional tort, strict liability, and products liability, alleging that the defendants' activities and products exposed John to asbestos. They also sued for Gloria's loss of consortium. A first amended complaint for personal injury and loss of consortium was filed in July 1999.

John died in October 1999, while the litigation was pending. In March 2000, the court granted Gloria Peterson's motion to appoint her as the successor in interest to John's claims, "substituting her for [the] deceased plaintiff," and granted her leave to file a second amended complaint.

### A. *The Second Amended Complaint*

In her "SECOND AMENDED COMPLAINT FOR SURVIVAL, LOSS OF CONSORTIUM, WRONGFUL DEATH—ASBESTOS," Gloria Peterson continued to pursue her individual claim for loss of consortium, added survivor claims as John's successor in interest, and also added wrongful death claims as John's legal heir.

The caption of the second amended complaint identified Gloria Peterson, in all of her various capacities, as the singular "Plaintiff" in the case: "GLORIA PETERSON, Individually, and as Successor-in-Interest to JOHN PETERSON, Deceased; and GLORIA PETERSON, as Legal Heir of JOHN PETERSON, Deceased, [¶] Plaintiff." In addition, allegations of the second amended complaint consistently referred to the "plaintiff," singular and to plaintiff's "injury," singular. The prayer sought judgment for "plaintiff."

Similarly, the caption of Peterson's verified answers to standard asbestos case interrogatories indicated that Gloria Peterson, in all her capacities, was

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.
[2] We refer to John by his first name for clarity, without intending any disrespect.

the "Plaintiff." She referred to herself as the singular "plaintiff" throughout that document and did not contend there was more than one plaintiff. The verification stated: "I, Gloria Peterson, declare: [¶] I am *the plaintiff* in the above-entitled action." (Italics added, underscoring omitted.) She signed the verification once, as "Gloria Peterson."

### B. *John Crane's Section 998 Offers*

Respondent John Crane, Inc. (John Crane), extended two settlement offers under section 998, both after the filing of the second amended complaint.

The first section 998 offer, dated October 30, 2002, was directed to "GLORIA PETERSON, PLAINTIFF, AND TO HER ATTORNEYS OF RECORD." John Crane offered to waive its costs, "including, but not limited to, any and all expert witness fees, in exchange for a dismissal with prejudice, and *plaintiff's* agreement to bear *her* own costs." (Italics added.) In this offer, therefore, John Crane indicated there was only one plaintiff. The offer was not accepted.

John Crane's second section 998 offer, dated April 30, 2004, was more specifically directed to Gloria Peterson in all of her capacities, as "plaintiffs": "GLORIA PETERSON, Individually, and as Successor-in-Interest to JOHN PETERSON, Decedent, and GLORIA PETERSON, as Legal Heir of JOHN PETERSON, Deceased, *Plaintiffs*, AND TO THEIR ATTORNEYS OF RECORD." (Italics added.) The caption identified Gloria Peterson, in all her capacities, as "Plaintiffs." The essential term of the offer was the same as the first section 998 offer, except that it referred to "plaintiffs": "Defendant, JOHN CRANE INC., in the above entitled action pursuant to Section 998 of the California Code of Civil Procedure hereby offers a waiver of costs, including, but not limited to, any and all expert witness fees, in exchange for a dismissal with prejudice, and *plaintiffs'* agreement to bear *their* own costs."[3] (Italics added.) This offer also expired without acceptance.

### C. *Trial*

The case proceeded to trial by jury. During his opening statement, Peterson's attorney asked rhetorically: "Who is the plaintiff and who was the decedent?" Counsel answered: "The plaintiff in this case is Gloria Peterson. Ms. Peterson is here with us today. She is back in the courtroom."

At the conclusion of the case, the jury was provided with a special verdict form, agreed upon by plaintiff, which referred consistently to the plaintiff,

---

[3] There was no explanation in the record or at oral argument for the reference in the second section 998 offer to "plaintiffs" instead of "plaintiff."

singular, except on one occasion: "Question No. 3: Was the defect in design a cause of injury, damage, loss or harm to the decedent and thereby to the plaintiff? [¶] . . . [¶] Question No. 7: Was the defect from failure to warn a cause of injury, damage, loss or harm to the decedent and thereby to the plaintiff? [¶] . . . [¶] Question No. 10: Was the negligence of defendant John Crane, Inc., a cause of injury, damage, loss or harm to the decedent and thereby to the plaintiff? [¶] . . . [¶] Question No. 12: Did the comparative fault of the decedent contribute as a cause of injury, damage, loss or harm to the decedent and thereby to the plaintiff? [¶] . . . [¶] Question No. 13: What do you find to be the total amount of damages, past and future, including economic and non-economic damages, if any, suffered by the *plaintiffs*. [¶] . . . [¶] Question No. 14: Assuming that 100% represents the total causes of the plaintiff's injury, damage, loss or harm, what percentage of this 100% is attributable to the negligence and/or defective product(s) of defendant John Crane, Inc., if any, or the comparative fault of the decedent, John Peterson, if any, or the negligence and/or defective product(s) of all other persons, if any?" (Italics added.) In addition, the special verdict form did not ask the jury to allocate damages among three plaintiffs or among the causes of action or type of claim.

The jury returned a verdict of no liability on the part of John Crane.

### D. *John Crane's Memorandum of Costs and Peterson's Motion to Tax Costs*

Having prevailed at trial, John Crane filed a memorandum of costs, seeking over $98,000 for items including expert costs and fees pursuant to section 998.

Peterson filed a motion to tax costs, indicating this time that there were really three "plaintiffs"—Gloria Peterson individually (loss of consortium claim), as successor in interest (survivor claims), and as legal heir (wrongful death claims). In the written motion, Peterson challenged the memorandum of costs by asserting, among other things, that there was more than one action or claim in the case and more than one plaintiff, and that the section 998 offer "was not allocated to each plaintiff rendering it ambiguous and invalid and therefore CRANE is not entitled to recover expert fees and costs."[4]

At the hearing on Peterson's motion to tax costs on August 3, 2005, Peterson's counsel attacked the second section 998 offer, contending it was

---

[4] The written motion addressed John Crane's first section 998 offer of October 2002, which had been directed solely to "Gloria Peterson." Peterson's objection to the second and operative section 998 offer was raised only at the hearing.

invalid because the lawsuit consisted of "three separate actions" and Peterson should be considered to be several different plaintiffs.

The trial court found that John Crane's second section 998 offer was valid and awarded John Crane approximately $72,000 in costs, including nearly $50,000 in expert witness fees. The court did not inquire into the relative financial resources of the parties or Peterson's ability to pay. Nor did Peterson request such an inquiry.

Judgment was entered in accord with the jury's special verdict and the trial court's award of costs to John Crane. This appeal followed.[5]

## II. *DISCUSSION*

■ Under section 998, until 10 days before trial "any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).) Although section 998 refers to entry of a judgment or award, an offer that provides for the plaintiff's dismissal of the action with prejudice is a valid form of offer under section 998. (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 470 [33 Cal.Rptr.3d 713].)

■ If the offer is not accepted within 30 days or before trial, it is deemed withdrawn. (§ 998, subd. (b)(2).) The failure to accept an offer has consequences for a plaintiff who does not obtain a more favorable result at trial. In that event, the plaintiff cannot recover its postoffer costs, must pay the defendant's costs from the time of the offer, and may be held liable (as was the case here) for a reasonable sum to cover the defendant's expert witness fees. (§ 998, subd. (c)(1).)[6]

Peterson contends the award of expert witness fees was erroneous in this matter because (1) the section 998 offer was invalid, in that it was a single

---

[5] Peterson's notice of appeal states that "Plaintiff and Appellant GLORIA PETERSON appeals" from the judgment. It does not state that Peterson is appealing as several appellants, or that she is appealing in various capacities. Peterson's notice of election under the California Rules of Court advised that "Plaintiff and Appellant" Gloria Peterson intended to proceed by appendix and requested preparation of reporters' transcripts.

[6] Section 998, subdivision (c)(1) reads: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

offer addressed to multiple plaintiffs; and (2) the court did not consider the parties' relative economic interests in determining whether the award was reasonable.

### A.   *Validity of Section 998 Offer*

In general, " 'a section 998 offer made to multiple parties is valid only if it is expressly apportioned among them and not conditioned on acceptance by all of them.' " (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 544 [135 Cal.Rptr.2d 404]; see *Weinberg v. Safeco Ins. Co. of America* (2004) 114 Cal.App.4th 1075, 1086 [8 Cal.Rptr.3d 224] (*Weinberg*) [" 'an offer to two or more parties, which is contingent upon all parties' acceptance, is not a valid offer under [998]' "]; *Meissner v. Paulson* (1989) 212 Cal.App.3d 785, 791 [260 Cal.Rptr. 826] (*Meissner*) ["as a matter of law only an offer made to a single plaintiff, without need for allocation or acceptance by other plaintiffs, qualifies as a valid offer under section 998"].) There is an exception to this rule: where there is more than one plaintiff, a defendant may still extend a single joint offer, conditioned on acceptance by all of them, if the separate plaintiffs have a "unity of interest such that there is a single, indivisible injury." (*Weinberg, supra,* at p. 1087.)

Peterson contends that there were actually three plaintiffs in this case because she sued in three different capacities. Further, Peterson argues, John Crane's second section 998 offer did not make any allocation among the three plaintiffs and was conditioned on acceptance by all three. Because her three capacities did not have a unity of interest, she maintains, the offer was invalid.[7]

John Crane, as the offeror, had the burden of establishing that the offer was sufficiently certain to comply with the requirements of section 998. (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 585 [11 Cal.Rptr.2d 820] (*Taing*).) Application of section 998 to undisputed facts, and the determination of the number of plaintiffs for purposes of section 998, are legal issues we review de novo. (See *Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 797 [101 Cal.Rptr.2d 167].)

In determining de novo whether John Crane's offer was valid for purposes of section 998, we consider first how many parties the offer addressed. If more than one, we would consider whether the section 998 offer was apportioned among the offerees and not conditioned on all of them accepting

---

[7] The second section 998 offer extinguished the first. (*Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154, 157–158 [133 Cal.Rptr.2d 339].) We therefore need not and do not examine the validity of the first offer.

it; and, if this standard was not met, whether the offer was nonetheless valid because the offerees had a unity of interest. As we discuss next, we need only address the first question to conclude that the offer was valid.

### Number of Party Offerees

In the second amended complaint, Peterson sued John Crane in her capacities as an individual (loss of consortium claim), as successor in interest to her husband's claims (survivor tort claims), and as her husband's legal heir (wrongful death claims). Peterson argues there were three plaintiffs because no one of them had standing to prosecute the causes of action vested in the others. John Crane argues, essentially, that there was one person prosecuting the action, so regardless of the number of capacities in which she sued, there was still only one plaintiff.

Ironically, the parties' positions in this appeal are contrary to their characterizations in much of the trial court proceedings. Through the time of trial it was Peterson who, despite proceeding in multiple capacities, depicted herself as a "plaintiff," *singular*, while it was John Crane who described Peterson in its second section 998 offer as "plaintiffs," *plural*, directing the offer to Gloria Peterson in each of her three capacities and seeking dismissal of all claims in exchange for *"plaintiffs'* agreement to bear *their* own costs." (Italics added.) In the matter before us, however, the question of the number of plaintiffs in the action is a legal one that is not dependent on the parties' characterizations.[8]

We disagree with Peterson's contention that Gloria Peterson, the individual, Gloria Peterson, as the successor in interest to her husband's claims, and Gloria Peterson, as her husband's legal heir, constituted three separate parties and three offerees for purposes of section 998.

■ We begin with the language of the statute. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) Section 998 provides that "any party may serve an offer . . . upon any other *party* to the action" to allow judgment in accord with the statute. (§ 998, subd. (b), italics added.) In the absence of an indication of some other meaning, we must give the word

---

[8] John Crane contends that the doctrine of judicial estoppel bars Peterson from arguing there were multiple plaintiffs. John Crane also urges that, by failing to object to the section 998 offer while it was pending, Peterson waived her right to contend the offer was invalid due to ambiguity. Peterson counters that her position in her motion to tax costs in the trial court was consistent with her position on appeal. We need not and do not decide whether judicial estoppel or waiver apply in this case, because we find that Peterson's arguments lack merit on other grounds. We do observe, however, that it would be consistent with the settlement purposes of section 998 for an offeree to clarify any perceived ambiguity of an offer with the offeror.

"party" its plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) The relevant plain and commonsense meaning of the word "party" is "[a]n individual concerned in a proceeding" such as "a person who is concerned in an action or affair." (Oxford English Dict. (2d ed. CD-ROM 2007) definition II, 7a.) A "party," therefore, is a person—not a cause of action, primary right, or legal capacity, but a *person.*[9]

Peterson's multiple capacities merely reflected why she, as a singular party, had standing to assert different types of claims. (See § 367 [lawsuit must be prosecuted in name of real party in interest].) In her individual capacity, Peterson had standing to pursue her claim for loss of consortium. In her capacity as successor in interest, she "succeed[ed] to [the] cause of action" of her deceased husband (§ 377.11) and was "substitute[d]" in as plaintiff for her late husband's claims. The "as Successor-in-Interest" language in the caption of the second amended complaint therefore explained why the individual Gloria Peterson had standing to sue for the claims formerly held by her husband, but it did not create a different Gloria Peterson or a separate plaintiff. Similarly, in her capacity as her husband's "heir[]-at-law," Peterson brought the wrongful death causes of action pursuant to section 377.60, which provides that a decedent's surviving spouse has standing to sue for wrongful death. (§ 377.60, subd. (a).) The "as Legal Heir of JOHN PETERSON" language in the caption explained why the person known as Gloria Peterson had standing to sue, but it did not create a separate plaintiff.

Thus, when Peterson assumed the roles of successor in interest and legal heir, she did not become a different person, a different plaintiff, or a different party, but merely acquired the legal capacity to pursue particular legal theories (as the same individual party). There was only one offeree plaintiff for purposes of section 998.

Peterson's reliance on *Menees v. Andrews* (2004) 122 Cal.App.4th 1540 [19 Cal.Rptr.3d 664] (*Menees*) is misplaced. *Menees* involved two distinct plaintiffs: a husband and wife who, at the time of the section 998 offer, were legally separated. (122 Cal.App.4th at p. 1545, fn. 3.) One cause of action in the complaint was in favor of the husband, and the other cause of action was

---

[9] Of course, the "person" can be a natural person or a separate legal entity such as a corporation. More generally, "party" can also refer to a group of people formed to engage in a shared activity. (See Oxford English Dict., *supra*, definition III, 11.) As applied in this case, therefore, a party may be a single individual or a group of individuals, but there is no indication that a single individual can be three parties. (See Black's Law Dict. (6th ed. 1990) p. 1122 [definition of party includes "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually"]; Black's Law Dict. (7th ed. 1999) p. 1144 [defining party as one who takes part in a transaction or "[o]ne by or against whom a lawsuit is brought"].)

in favor of the wife. (*Id.* at p. 1542.) The court ruled that the section 998 offer to the husband and wife jointly was invalid. (122 Cal.App.4th at p. 1546.) Underlying the ruling was the court's concern that a single offer to two people can create a conflict between them if they have different views on whether to proceed with a case, resulting in the loss of an opportunity to settle at least one of the parties' claims. (*Id.* at p. 1544.) Here, by contrast, there was only one person who had to decide whether to take the offer (or propose a counteroffer)—Gloria Peterson. There was no concern in *Menees* that a single individual suing in multiple capacities might have mixed feelings about whether to settle. Nor did *Menees* suggest that separate settlement offers have to be tailored to address different concerns within a single individual's mind.

Peterson also relies on cases in other discreet contexts that view a person who has sued in different capacities to constitute multiple plaintiffs. None is persuasive in the context of section 998 or in this case particularly.

In *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1278 [45 Cal.Rptr.3d 222] (*Quiroz*), the mother of a decedent timely filed a wrongful death action (seeking compensation for her own damages). In an amended complaint, she brought a survivor cause of action (seeking damages for the decedent's predeath injuries) after the statute of limitations had run. At issue was whether the filing of the survivor action "relate[d] back" to the filing of the wrongful death claim in the original complaint, thereby avoiding the bar of the statute of limitations. (*Id.* at pp. 1262, 1278.) The court observed that the relation-back doctrine required, among other things, that the amended complaint must involve the same injury, and a new plaintiff could not be joined after the limitations period has run if he or she seeks to enforce an independent right or greater liability. (*Id.* at p. 1278.) The court held that the amended complaint did not relate back, because "the survivor cause of action pleaded a different injury than the wrongful death cause of action." (*Id.* at p. 1262.) The court also concluded that the two claims were asserted by "different plaintiffs, [the decedent's mother] acting in two separate capacities with respect to each." (*Id.* at p. 1278.) The court held that, "[a]s a matter of law, these distinct claims are technically asserted by different plaintiffs and they seek compensation for different injuries." (*Ibid.*)

*Quiroz* sheds no light on the issue before us. *Quiroz* did not deal with a section 998 offer and did not determine whether an individual who sues in different capacities should be entitled to separate or apportioned section 998 offers. Its use of the phrase "different plaintiffs" does not compel the conclusion that a person who sues in multiple capacities constitutes more than one party for purposes of section 998.

In *First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468 [119 Cal.Rptr.2d 787] (*Paquet*), plaintiff minority shareholders sued defendants in a shareholder derivative action. The defendant bank filed a cross-complaint, which was dismissed as to the Paquet parties in their individual capacities. (*Id.* at pp. 471–472.) Because claims brought by the Paquets in the shareholder derivative complaint had not been resolved, the question was whether the dismissal of the cross-complaint was immediately appealable. The court ruled that the pendency of a complaint raising solely *derivative* causes of action does not prevent appeal of a judgment on a cross-complaint resolving all causes of action against the plaintiff and cross-defendants in *individual* capacities. (*Id.* at p. 473.) The court analogized to a case in which it was held that claims brought in an individual capacity, as executor of an estate, and as guardian ad litem, were considered asserted by different parties for purposes of determining appealability. (*Id.* at p. 474.) Similarly, the *Paquet* court held, claims brought in shareholder derivative actions are asserted in a representative capacity rather than an individual capacity, and were thus brought by different parties. (*Ibid.*)

*Paquet* is not on point. It was not decided in the context of section 998. Moreover, claims brought by executors and guardians ad litem, as well as shareholder derivative actions, are representative claims. Peterson's roles as "Successor-in-Interest" and "Legal Heir" are not representative capacities. Peterson was not appointed to represent the interest of minor children or absentee plaintiffs, but merely stepped into her husband's position as to the survivor actions and prosecuted claims on her own behalf as legal heir. As *Paquet* recognized, "*a* party" can "bring[] an action in multiple capacities." (*Paquet, supra*, 98 Cal.App.4th at p. 474, italics added.)

For the reasons that *Quirez* and *Paquet* are not on point, we find *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237 [173 Cal.Rptr. 345] also inapposite. There, the decedent's widow sued for wrongful death on her own behalf and as guardian ad litem for the decedent's minor children. The decedent's widow, as the plaintiff in her capacity as administrator of the decedent's estate, sought to amend the complaint to assert a claim for damages suffered by decedent before death. The trial court denied the motion on the ground that the claim was time-barred. The Court of Appeal affirmed; the amended complaint would not relate back because it was filed on behalf of the estate for injuries before the decedent's death, while the wrongful death claim was brought by heirs for their losses due to the death. (*Id.* at p. 243.) Furthermore, the denial of the motion for leave to amend the complaint was appealable as a final determination of appellant's rights, because appellant's capacity as administrator made her a separate party. (*Id.* at p. 241; see also *Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370] [husband's cause of action for loss of consortium did not relate back to wife's claim for personal injuries].)

Cases pertaining to the relation-back doctrine and appealability are not germane to the matter before us, because they are based on different considerations. The relation-back doctrine is an exception to the usual rules pertaining to the amendment of pleadings and the fundamental policy against stale claims. The ability of one plaintiff to pursue an immediate and direct appeal of a trial court ruling, while the remainder of the case proceeds in the trial court, is an exception to the general rules of appellate review and the fundamental policy against piecemeal appeals. Neither context is concerned with section 998's purpose of facilitating settlements.[10]

Consideration of the purposes of section 998, and the intent behind the judicially created rules regarding section 998 offers to multiple parties, confirms that Peterson should not be treated as three different plaintiffs. At the core of the rules pertaining to section 998 offers to multiple plaintiffs is the concern that the multiple parties will not be able to agree whether to accept the offer and, as a result, the chance for the settlement of at least some of the claims in a case will be lost. (*Menees, supra,* 122 Cal.App.4th at p. 1544; see *Taing, supra,* 9 Cal.App.4th at p. 584 [single unapportioned offer to multiple defendants "places a reasonable defendant at the mercy of codefendants whose refusal to settle may be unreasonable"].) That concern does not arise where the offeree is a single individual, prosecuting claims on her own behalf (as opposed to in a representative capacity), who is faced with no greater internal mental debate than any individual plaintiff who must decide whether to settle all of her causes of action. (See *People ex rel. Lockyer v. Fremont General Corp.* (2001) 89 Cal.App.4th 1260, 1268 [108 Cal.Rptr.2d 127] (*Fremont*) [defendant's § 998 offer does not have to allocate the settlement sum among the various forms of relief sought by the plaintiff].)[11]

Indeed, the interpretation that Peterson urges might well frustrate the settlement purposes of section 998. A defendant may be willing to settle for a certain sum if the settlement would actually end the case for that defendant,

[10] Accepting Peterson's argument—that an individual who sues in more than one legal capacity constitutes multiple plaintiffs and parties—would open a Pandora's box of procedural anomalies. For example, would Gloria Peterson, in each of her capacities, be entitled to separate voir dire, cross-examination of witnesses, and closing argument at trial? Would she be subject to depositions in each of her capacities? Could John Crane evade the statutory limit on the number of interrogatories by sending different sets of interrogatories to Gloria Peterson in each of her capacities?

[11] The initial concern prompting nullification of joint offers to multiple plaintiffs was that, unless the proposed settlement sum was apportioned among those plaintiffs, it would be impossible to determine if any one of them did better at trial. (*Randles v. Lowry* (1970) 4 Cal.App.3d 68, 74 [84 Cal.Rptr. 321] (*Randles*).) That concern is absent here, not only because Gloria Peterson did not constitute multiple plaintiffs, but also because the proposed settlement sum was zero—John Crane having proposed a mutual waiver of costs—and one-third of zero is still zero.

but it may not be willing to settle just a part of the case for a part of that sum, while remaining in the litigation on additional claims. For this reason, permitting a defendant to serve a single offer conditioned on the dismissal of *all* of the claims against it *creates* the possibility of a settlement where one might not otherwise exist. This enhanced settlement potential may be negated or outweighed if the single offer goes to *multiple* individuals: negated because the multiple offerees may disagree whether the offer should be accepted, and outweighed by the potential unfairness to an offeree who could be held captive in the case by the unreasonableness of the others. But because neither of these concerns applies when the offer is directed to a singular individual, the enhanced prospects of settlement are actually furthered by permitting a defendant to serve a single offer on a singular person who, like Gloria Peterson, has chosen to pursue claims that require her to assume different legal capacities.

Much closer to the matter at hand than the relation-back and appealability cases is the decision in *Fremont, supra,* 89 Cal.App.4th 1260. There, the People of the State of California (People), represented by the state Attorney General and a number of district and city attorneys, sought civil penalties, restitution, and injunctive relief. (*Id.* at pp. 1262–1263.) A defendant served a single section 998 offer, proposing judgment in the People's favor for $2 million with each party to bear its own costs and attorney fees. (89 Cal.App.4th at p. 1268.) The People rejected the offer and then lost upon defendant's motion for judgment. (*Id.* at p. 1263.) In arguing against the ensuing award of expert witness fees, the People contended the section 998 offer was fatally uncertain because it failed to allocate the settlement sum between restitution and civil penalties, did not designate how restitution was to be awarded to victims, and did not set forth how civil penalties were to be allocated among various prosecuting agencies. (89 Cal.App.4th at p. 1268.) Specifically, the People claimed that they would not have known what to do with the settlement money if they had accepted the offer, and the offer created an unacceptable dilemma by requiring the People to allocate a final judgment *between the government and the individual consumers* who were entitled to restitution. (*Id.* at pp. 1269–1270.)

The Court of Appeal held that the defendant had upheld its burden of establishing the validity of the section 998 offer. Although suit had been brought for the benefit of different government agencies and individuals, the court construed the People as a "*single* plaintiff." (*Fremont, supra,* 89 Cal.App.4th at p. 1269, italics added.) It further distinguished the defendant's section 998 offer from one in which a lump sum had been offered to "multiple parties" such that it was "*impossible* for a particular offeree 'to evaluate it and make a reasoned decision whether to accept without the additional burden of obtaining the acceptance of [coparties] or suffering from

their refusal to settle, especially when that refusal may have been *unreasonable*.' [Citation.]" (89 Cal.App.4th at p. 1268, italics added.) The court concluded: "The People's professed uncertainty about what to do with the money is not the type of uncertainty that invalidates a section 998 offer. [¶] Like any other litigant the People could be expected to weigh the value of cash in hand against the uncertain future prospects for obtaining the relief they sought. Any dilemma the People faced cannot be attributed to uncertainty in the offer itself, or affect the validity of defendant's offer to buy its peace in traditional fashion." (*Fremont, supra,* at p. 1270.)

Consistent with *Fremont,* we conclude that Gloria Peterson was a "single plaintiff," capable of deciding for herself whether a dismissal of all of her claims in exchange for a mutual waiver of costs was an acceptable resolution. (*Fremont, supra,* 89 Cal.App.4th at p. 1260.) Any uncertainty was not the type that would invalidate John Crane's section 998 offer.

Peterson insists that she should be considered multiple parties because it would have been easy for John Crane to send three separate section 998 offers rather than one. The argument is unconvincing, as it also would have been easy for Peterson's attorney to make some effort to clarify or negotiate the matter with the attorney for John Crane, or to send out a counteroffer to her liking. In any event, it is not the ease of performing a task that determines whether a statute requires its performance. After all, it would be simple enough in this computer age for a litigant to serve separate section 998 offers for each of 10 or 20 causes of action, but there is no such mandate. (See *Fremont, supra,* 89 Cal.App.4th at p. 1268.) Nor is there cause to impose a separate-offer requirement on a defendant hoping to settle with an individual who has brought suit in more than one capacity.

As the law presently stands, a single offer to more than one *person* must generally be apportioned and unconditional. (See, e.g., *Menees, supra,* 122 Cal.App.4th 1545, fn. 3 [separated husband and wife]; *Weinberg, supra,* 114 Cal.App.4th at pp. 1079, 1087 [husband and wife]; *Meissner, supra,* 212 Cal.App.3d at p. 791 [individual and his insurer].) We decline Peterson's urging to expand the law in a manner that artificially divides a single individual into multiple offerees. The section 998 concept has been part of the law since 1851 with little substantive change (*Taing, supra,* 9 Cal.App.4th at p. 585), it has been codified as section 998 since 1971, and cases nullifying a joint unapportioned offer to multiple parties date back to at least 1970 (*Randles, supra,* 4 Cal.App.3d at p. 74); yet we have found no reported case in which a plaintiff's decision to sue in multiple capacities has invalidated a defendant's section 998 offer. One need look no further than the facts of this case to confirm that such a requirement would be counterintuitive and blur the presently clear demarcation between one party and multiple parties. When

Peterson received John Crane's single section 998 offer directed jointly to all of her capacities, she did not object to the form of the offer, express any concern that the offer was uncertain, or attempt to clarify the offer with John Crane. Peterson never complained that she in one capacity had an insurmountable conflict with herself in another capacity. Nor is there any indication in the record that Peterson declined the offer because she believed it was invalid, was confused by its form, or was unable to agree with herself, or that she turned the offer down for any reason other than simply thinking she could do better at trial. From all appearances of the record, the multiple-plaintiffs idea never even occurred to her or to her attorneys until she had lost at trial and faced the statutory consequences of letting the offer lapse.

■ In the end, we will leave intact the bright-line rule that a separate offer (or an apportioned and unconditional joint offer) should be extended to each *party*, not to each capacity in which a singular individual chooses to sue. (See *Menees, supra,* 122 Cal.App.4th at p. 1546 ["As our Supreme Court has recognized, the application of 'bright line rules' in determining the validity and enforceability of section 998 offers serves the interests the statute is designed to promote—that is, settlement of disputes."].)

■ There was one plaintiff and party-offeree for purposes of section 998 in the matter before us. Peterson has thus failed to establish that the section 998 offer was invalid as an offer to multiple parties.

B. *Parties' Relative Economic Resources in Calculating Reasonable Award*

■ An award of expert witness fees under section 998 must be for no more than a "reasonable sum" covering the defendant's costs of the services of expert witnesses, "actually incurred and reasonably necessary" in trial or preparation for trial. (§ 998, subd. (c)(1).) A determination that a cost award under section 998 is reasonable is reviewed for an abuse of discretion. (*Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550, 1556–1557 [47 Cal.Rptr.3d 206] (*Seever*); *Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262 [74 Cal.Rptr.2d 607].)

Peterson contends that the reasonableness of an award of expert witness fees necessitates inquiry about the parties' respective financial situations. Because the trial court made no such inquiry, she argues, the section 998 award must be reversed and the matter must be remanded for a hearing on that issue. She bases her argument on *Seever, supra,* 141 Cal.App.4th 1550.

In *Seever,* the plaintiff sued his employer for disability discrimination, family and medical leave discrimination, and age discrimination, in violation

of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and public policy. (*Seever, supra*, 141 Cal.App.4th at p. 1555.) The plaintiff lost at trial, and his motion to tax or strike the defendant's costs was denied. (*Id.* at p. 1556.) On appeal, he contended that the court erred in awarding the defendant expert witness fees under section 998, on the ground that the defendant's section 998 offer was not sufficiently definite and certain. (*Seever, supra*, at p. 1556.) The Court of Appeal rejected this argument. (*Id.* at p. 1561.) It then proceeded to consider sua sponte the reasonableness of the amount of the award, opining that "reasonableness must be measured by considerations beyond whether it was reasonable for the offering party to have incurred the expense." (*Ibid.*) The court concluded: "In our view, the trial court also must take account of the offeree's economic resources in determining what is a 'reasonable' cost award." (*Ibid.*)

The *Seever* court explained that, from its perspective, trial courts must ensure that the incentives to settle are balanced between the two parties, so less affluent parties will not be pressured into accepting unreasonable offers merely to avoid the risk of a financial penalty they cannot afford. (*Seever, supra*, 141 Cal.App.4th at pp. 1561–1562.) Thus, *Seever* maintained, trial courts may have to " 'scale' the financial incentives (in this instance the section 998 cost awards) to the parties' respective resources." (*Seever, supra*, at p. 1562.) The court observed that this consideration is "especially important in the context of litigation under FEHA (California Fair Employment and Housing Act; Gov. Code, § 12900 et seq.) and similar laws" and relied on federal and state employment decisions which "demonstrated sensitivity to the imbalance inherent in allowing equal cost shifting between unequal parties." (*Seever, supra*, at p. 1562.) The *Seever* court remanded the case for a further evidentiary hearing because it was unknown whether "the cost award allowed here represents an unduly powerful settlement incentive to a litigant of Seever's means." (*Ibid.*)

Peterson argues that, as in *Seever*, the trial court here made no inquiry as to the parties' respective economic means, and the case should be remanded for consideration of the economic disparity between the corporation John Crane, on the one hand, and the widow Peterson, on the other. John Crane counters that *Seever* should be limited to age and disability employment discrimination cases, and warns that adoption of the *Seever* rule would require offerors to calibrate section 998 demands not only based on the strength of the case, but also on the offeree's perceived ability to pay expert witness costs, ultimately providing an advantage to poorer plaintiffs and a disadvantage to corporations.

We need not resolve the potential application of *Seever* to the matter at hand, because Peterson did not raise the issue in the trial court. As a general rule, issues not raised in the trial court cannot be asserted for the first time on appeal. Peterson argues that *Seever* was not decided until after the award and judgment in this case (and notes that the plaintiff in *Seever* had not raised the issue in the trial court either), and urges that because the issue is purely of law, we have discretion to consider it on appeal. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].)

We decline to exercise our discretion in this regard, however. The reasonableness of a section 998 award was a statutory requirement that preceded *Seever*, so the fact that *Seever* was issued after entry of judgment is of little moment. Moreover, the resolution of the issue does not involve an important question of public policy or public concern, but simply determines whether in this particular case a trial court abused its discretion in deciding how much one party should pay another. In addition, not only did Peterson fail to contend in the trial court that the parties' respective economic resources should be considered, there is no indication that Peterson actually lacked the financial ability to pay the costs claimed by John Crane or that they constituted an "unduly powerful settlement incentive to a litigant of [Peterson's] means." (*Seever, supra*, 141 Cal.App.4th at p. 1562.)[12]

Peterson has not established that the amount of the trial court's award of expert witness fees was unreasonable.

## III.   *DISPOSITION*

The judgment is affirmed.

Gemello, J., concurred.

**JONES, P. J.,** Dissenting.—I respectfully dissent.

The majority concludes that the single Code of Civil Procedure section 998[1] offer made by respondent John Crane, Inc. (John Crane), to "GLORIA PETERSON, Individually, and as Successor-in-Interest to JOHN PETERSON, Decedent, and GLORIA PETERSON, as Legal Heir of JOHN PETERSON, Deceased, Plaintiffs" was valid because it was made to but a single "party" to the litigation. I disagree. In my view, the offer was made to two

---

[12] Furthermore, given the absence of any such evidence in the record, it cannot be said that the trial court abused its discretion in failing to consider it.

[1] Unless otherwise indicated, all further section references will be to the Code of Civil Procedure.

parties because Gloria Peterson (Peterson) was asserting two different legal claims: (1) those she held individually for wrongful death and the associated loss of consortium, and (2) the survivor claims she was asserting as the successor in interest to her deceased husband John. I find no basis in the statute or case law to adopt a rule that a single human being who pleads multiple claims in different legal capacities must be deemed a single "party" for purposes of section 998.[2]

To begin, I agree with the majority's statement of the controlling law. As a general rule, a section 998 offer that is made to multiple parties is valid only if it is expressly apportioned among them and not conditioned on acceptance by all of them. (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 544 [135 Cal.Rptr.2d 404].) However, a single joint offer to multiple parties that is conditioned on acceptance by all can be valid if the parties have a "unity of interest such that there is a single, indivisible injury." (*Weinberg v. Safeco Ins. Co. of America* (2004) 114 Cal.App.4th 1075, 1087 [8 Cal.Rptr.3d 224] (*Weinberg*).) Like the majority, I agree it is appropriate to apply those rules here using a three-part analysis: (1) was the section 998 offer at issue made to multiple parties? (2) if so, was it apportioned among the offerees and not conditioned on acceptance by all of them? and if not, (3) was the offer nonetheless valid because the offerees had a unity of interest? I will address each point in turn.

### A. Was the Section 998 Offer Made to Multiple Parties?

I believe the answer to the first question plainly is yes. The offer was made to "GLORIA PETERSON, Individually, *and* as Successor-in-Interest to JOHN PETERSON, Decedent, *and* GLORIA PETERSON, as Legal Heir of JOHN PETERSON, Deceased, Plaintiffs." (Italics added.) The use of the conjunctive "and" demonstrates clearly that John Crane made its offer to more than one party.

The majority implicitly concedes that the offer itself was made to more than one party, but concludes that the number of parties to whom the offer was made is a legal question that is not dependent upon the parties' characterization. (Maj. opn., *ante*, at p. 506.) Even if I were to assume the

---

[2] Before addressing the merits of the majority's analysis, I must address two preliminary arguments John Crane has made. First, John Crane contends Peterson is barred by the doctrine of judicial estoppel from arguing there were multiple plaintiffs. I reject that argument because Peterson's position in her motion to tax costs is consistent with the position she takes here. Also unpersuasive is John Crane's argument that, by failing to object to the section 998 offer, Peterson waived her right to contend it was invalid due to ambiguity. Peterson's argument here and at the motion hearing, was that the section 998 offer was invalid because it was not apportioned and was conditioned on acceptance by all offerees.

majority is correct on this point, I disagree with the majority's conclusion that the offer was directed to only one "party."

I turn to the statute at issue. As is relevant, section 998 states "any party may serve an offer . . . upon any other *party* to the action" to allow judgment in accord with the statute. (§ 998, subd. (b), italics added.) The common legal definition of the word "party" is "One by or against whom a lawsuit is brought . . . ." (Black's Law Dict. (8th ed. 2004) p. 1154; see also *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 [21 Cal.Rptr.3d 331, 101 P.3d 140].)

When Peterson filed her second amended complaint, she did so in two different legal capacities. As an individual, she filed a wrongful death claim. (See § 377.60, subd. (a).)[3] As part of that claim, Peterson was entitled to recover damages for the loss of her husband's society and companionship, i.e., loss of consortium. (See 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 1690–1691, pp. 1220–1223.)

However, Peterson also brought suit against John Crane as a successor in interest to the claims that her deceased husband John had previously asserted. (See § 377.31.)[4] As a successor in interest, Peterson "succeed[ed] to [the] cause of action" of her deceased husband. (§ 377.11.) Since Peterson brought claims against John Crane in two different legal capacities, I believe it is reasonable to conclude she was a different "party" in each capacity for purposes of section 998.

This conclusion is consistent with the long-established rule of Anglo-American jurisprudence that a husband and wife are entirely separate legal entities. (See, e.g., *Follansbee v. Benzenberg* (1954) 122 Cal.App.2d 466, 476 [265 P.2d 183]; see also 11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband and Wife, § 18, pp. 55–57.) Prior to John's death, he and Peterson indisputably constituted two separate plaintiffs. Any section 998 offer extended to both of them would have constituted an offer to multiple offerees. (*Menees v. Andrews* (2004) 122 Cal.App.4th 1540, 1543–1544 [19 Cal.Rptr.3d 664].) Since Peterson merely stepped into John's shoes as plaintiff for purposes of prosecuting his claims, there remained, in effect, two plaintiffs in

[3] Section 377.60 states in part, "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: [¶] (a) The decedent's surviving spouse . . . ."

[4] Section 377.31 states: "On motion after the death of a person who commenced an action or proceeding, the court shall allow a pending action or proceeding that does not abate to be continued by the decedent's personal representative or, if none, by the decedent's successor in interest."

the case. The section 998 offer to Peterson, individually, and Peterson, as successor in interest to her deceased husband's claims, constituted an offer to multiple offerees as well.

My conclusion on this point is also supported by a long line of cases that hold a person who sues in more than one legal capacity is viewed as more than one plaintiff. In *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1278 [45 Cal.Rptr.3d 222] (*Quiroz*), the mother of a decedent filed a wrongful death action seeking compensation for her own damages. After the statute of limitations had run, the mother filed an amended complaint alleging a survivor cause of action that sought damages for her son's predeath injuries. The pivotal issue in the case was whether the filing of the survivor action related back to the filing of the wrongful death claim in the original complaint, thereby avoiding the bar of the statute of limitations. (*Id.* at pp. 1262, 1278.) The *Quiroz* court observed that the relation-back doctrine required that the amended complaint must involve the same injury, and a new plaintiff could not be joined after the limitations period has run if he or she seeks to enforce an independent right or greater liability. (*Id.* at p. 1278.) The court further held that the amended complaint did not relate back, because "the survivor cause of action pleaded a *different injury* than the wrongful death cause of action." (*Id.* at p. 1262, italics added.) The *Quiroz* court also concluded that the two claims were asserted by "*different plaintiffs*, [the decedent's mother] acting in two separate capacities with respect to each . . . ." (*Id.* at p. 1278, italics added.) The court held that, "[a]s a matter of law, these distinct claims are technically asserted by different plaintiffs and they seek compensation for different injuries." (*Ibid.*)

In *First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468 [119 Cal.Rptr.2d 787] (*Paquet*), plaintiff minority shareholders sued the defendant bank and others in a shareholder derivative action. The defendant bank filed a cross-complaint, which was dismissed as to the plaintiffs in their individual capacities. (*Id.* at pp. 471–475.) The plaintiffs then sought and obtained an order awarding them attorney fees. Because claims brought by the plaintiffs in the shareholder derivative complaint had not been resolved, the question on appeal was whether the order awarding them fees was appealable. The *Paquet* court ruled that the pendency of a complaint raising solely derivative causes of action does not prevent the appeal of a judgment on a cross-complaint that resolves all causes of action against the plaintiffs and cross-defendants in their individual capacities. (*Id.* at p. 473.) The court analogized to a case holding that claims brought in individual capacities, as executor of an estate, and as guardian ad litem, were considered to be asserted by different parties for purposes of determining appealability. (*Id.* at pp. 474–475.) Similarly, the *Paquet* court held, claims brought in shareholder derivative actions are asserted in a representative capacity rather than an individual capacity, and are thus filed by different parties. (*Ibid.*)

In *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237 [173 Cal.Rptr. 345], the decedent's widow sued for wrongful death on her own behalf and as guardian ad litem for the decedent's minor children. The decedent's widow, in her capacity as administratrix of the decedent's estate, later sought to amend her complaint to assert a claim for damages suffered by the decedent before his death. The trial court denied the motion on the ground that the claim was time-barred. The Court of Appeal affirmed reasoning that the amended complaint did not relate back because it was filed on behalf of the estate for injuries before the decedent's death, while the wrongful death claim was brought by heirs for their losses due to the death. (*Id.* at p. 243.) Furthermore, the denial of the motion for leave to amend the complaint was appealable as a final determination of the appellant's rights, because the appellant's capacity as administratrix made her a separate party. (*Id.* at p. 241; see also *Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370] [husband's cause of action for loss of consortium did not relate back to wife's claim for personal injuries].)

While none of these cases addressed the issue of multiple parties for purposes of a section 998 offer, the essential point in each is the same. When a plaintiff sues in more than one legal capacity, each capacity is treated as a separate plaintiff. I believe the same rule should apply to offers that are made pursuant to section 998.

The majority adopts a different analysis on many of these points. I respectfully disagree.

The majority interprets the word "party" in section 998 to mean "person" and then reasons that the multiple capacities under which Peterson sued were irrelevant because she was simply a single person who was asserting different types of claims. (Maj. opn., *ante*, at pp. 506–507.) While Peterson was a single person who was asserting different types of legal claims, she also was asserting those claims under different legal capacities. As *Quiroz, Paquet,* and *Dominguez* illustrate, when a plaintiff asserts different legal claims under different legal capacities, each capacity is treated as a separate plaintiff. In my view, the fact that Peterson was alleging claims under multiple legal capacities is not irrelevant, it is controlling.

Next the majority notes that the reason why offers to multiple plaintiffs are subject to special rules is the "concern that the multiple parties will not be able to agree whether to accept the offer and, as a result, the chance for the settlement of at least some of the claims in a case will be lost." (Maj. opn., *ante*, at p. 510.) According to the majority, "[t]hat concern does not arise where the offeree is a single individual, prosecuting claims on her own behalf . . . who is faced with no greater internal mental debate than any

individual plaintiff who must decide whether to settle all of her causes of action." (Maj. opn., *ante*, at p. 510.) However, this argument assumes that all of the claims Peterson was asserting, both individually and in her representative capacity, were necessarily aligned. That assumption is faulty. The interests Peterson was asserting on her own behalf may well have been different from the interests she was asserting as the successor in interest to her late husband's claim. As to the latter claim, many factors may have come into play in assessing John Crane's offer, including the details of her late husband's estate plan, the identity of any possible residual beneficiaries, and the existence of other individuals or entities who might have some interest in the decedent's estate.

The majority also faults Peterson because she "never complained that she in one capacity had an insurmountable conflict with herself in another capacity. Nor is there any indication in the record that Peterson declined the offer because she believed it was invalid, was confused by its form, or was unable to agree with herself . . . ." (Maj. opn., *ante*, at p. 513.) In my view, these arguments fail to take into account the applicable standard of review. John Crane, as the offeror, had the burden of proving that the offer was valid under section 998. (*Weinberg, supra*, 114 Cal.App.4th at p. 1086.) Any ambiguity in that offer must be resolved in favor of the offeree. (*Ibid.*) Furthermore, nothing in the statute imposes on the offeree a burden to rebut proof of validity of the offer of compromise before the offeree may be subject to an adverse award of the specified fees and costs.

In a related argument, the majority observes that it would have been "easy for Peterson's attorney to make some effort to clarify or negotiate the matter with the attorney for John Crane, or to send out a counteroffer to her liking." (Maj. opn., *ante*, at p. 512.) Of course, communication between opposing counsel on the subject of settlement should be encouraged, and counsel should realistically evaluate the risk of further proceeding to trial in the face of a reasonable section 998 offer. But I conclude a burden may not be shifted to, or placed on the offeree to prove a conflict between or among an individual person's multiple capacities in which he or she brings an action. Whether silence is the proper response to what the offerees' counsel concludes is an invalid single offer to multiple offerees, is a professional judgment counsel must make.

Next, the majority argues that accepting Peterson's argument that an individual who sues in more than one legal capacity constitutes multiple plaintiffs "would open a Pandora's box of procedural anomalies" such as whether each plaintiff would be entitled to voir dire, to cross-examine witnesses, or to participate in final argument. (Maj. opn., *ante*, at p. 510, fn. 10.) Of course, the parties to this appeal have not raised any issues regarding voir dire, the right to cross-examination, or the right to participate in final

argument so those questions are not before us. Furthermore, as the *Quiroz, Paquet,* and *Dominguez* cases illustrate, the Pandora's box about which the majority is concerned, has been open for some time with no discernable ill effect. I am not convinced that recognizing that a person who sues in more than one legal capacity is more than one party as that term is used in section 998, subdivision (b) would lead to the problems the majority suggests.

Finally, the majority relies on *People ex rel. Lockyer v. Fremont General Corp.* (2001) 89 Cal.App.4th 1260 [108 Cal.Rptr.2d 127] (*Fremont*) to support its position. In that case, the People of the State of California represented by the Attorney General and several district and city attorneys filed suit against a corporation seeking civil penalties, restitution, and injunctive relief. (*Id.* at p. 1262.) The corporation served a single section 998 offer proposing judgment in the People's favor for $2 million. (89 Cal.App.4th at p. 1268.) The People rejected the offer, and then lost at trial. (*Id.* at p. 1263.) Subsequently, the trial court awarded the corporation over $500,000 under section 998. On appeal, the People challenged the award arguing the corporation's offer was uncertain because it did not allocate the sum indicated to the alleged "victims" and did not designate the manner in which any civil penalties were to be allocated among the various prosecuting agencies. (89 Cal.App.4th at p. 1268.) The appellate court rejected that argument explaining that the "problems of uncertainty presented by lump-sum or conditional settlement offers to multiple parties are not presented here. Defendant agreed unconditionally to allow judgment to be taken against it for a specific amount in favor of *the single plaintiff.*" (*Id.* at p. 1269, italics added.) Thus *Fremont* simply stands for the proposition that an offer made to a single plaintiff need not be allocated. Stated differently, the fact that the plaintiff in *Fremont* appeared in a representative capacity did not change the fact that the representative, the People, was but one plaintiff. Similarly, Peterson, appearing in her representative capacity as successor in interest, was also a single plaintiff—one of the two plaintiffs in the action before us.

I conclude John Crane's section 998 offer was made to multiple parties.

## B. *Apportionment and Conditionality*

A section 998 offer to multiple parties must apportion its demand among the offerees and must not be conditioned on all of the offerees accepting the offer. I consider each concept in turn.

The purpose behind the apportionment requirement is that, by making it clear what deal is being proposed to each plaintiff, it can later be determined

whether a plaintiff who did not accept the offer obtained a better result at trial. (*Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579, 583–584 [11 Cal.Rptr.2d 820].)

Here, John Crane's section 998 offer required a dismissal of the action in exchange for a *waiver* of costs. No plaintiff was to receive any sum from John Crane. It is impossible to apportion "zero" or, at least, unnecessary to do so. There was no apportionment problem in the section 998 offer.

The requirement that the offer not be conditioned on the acceptance of all the offerees is based on the view that it is unfair to the plaintiff who believes the offer is reasonable as to him or her, and wants to accept it, but is precluded from doing so because another plaintiff refuses. From this perspective, conditionality frustrates the chances of settlement. (*Menees v. Andrews, supra,* 122 Cal.App.4th at p. 1544.)

Here, John Crane's section 998 offer required "*a* dismissal with prejudice, and *plaintiffs'* agreement to bear *their* own costs." (Italics added.) The offer was not expressly conditioned on acceptance by all of the plaintiffs, but such a condition may be implied where the offer is made in a single document that refers to plaintiffs in the conjunctive. (*Menees v. Andrews, supra,* 122 Cal.App.4th at pp. 1543, 1544, 1546 [offer "to settle and dismiss the above-entitled action in its entirety for a waiver of costs, each party to bear its own costs and attorney's fees" "made in a single document, which referred to appellants in the conjunctive" and "quite tellingly, provided only one signature line—for the attorney who represented both of them" was implicitly conditioned on acceptance by all plaintiffs]; *Wickware v. Tanner* (1997) 53 Cal.App.4th 570, 577 [61 Cal.Rptr.2d 790] [offer contained in "a single document addressed to all defendants," which offers to take judgment against all defendants and not against one or more of them, and requires that "defendants in the plural, and not any one defendant in the singular, accept the offer" was implicitly conditional].) John Crane's offer was in a single document, referred to plaintiffs in the conjunctive, and stated that the case would be settled only if the plaintiffs agreed to bear their own costs and together effect a singular "dismissal." Accordingly, the offer was improperly conditioned on the acceptance of all of the multiple offerees.

John Crane's arguments to the contrary are unpersuasive. It relies on *Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102 [30 Cal.Rptr.2d 486], in which the court rejected the appellant's argument that a section 998 offer was impliedly conditioned on the acceptance of all three offerees. (25 Cal.App.4th at p. 113.) The court reached this conclusion, however, because the issue had not been raised in the trial court and because

the offer was not rejected due to the plaintiffs' belief that it had to be accepted by all plaintiffs. (*Id.* at pp. 113–114.) *Santantonio* is not helpful to my analysis.

John Crane also argues that the point of the conditionality rule is to avoid conflicts between two or more plaintiffs who hold different views on whether to proceed with a case, which does not occur when a single individual constitutes all of the plaintiffs. I disagree. The point of the rule is to avoid a situation where some claims in the case, held by one offeree, could have been settled but for the condition that all claims must be settled. John Crane's offer was conditioned on all offerees dismissing all of their claims.

### C. *Unity of Interest*

As mentioned, as an exception to the general rule, a defendant may extend a single, joint offer, conditioned on acceptance by all plaintiffs, "where the plaintiffs have a unity of interest such that there is a single, indivisible injury." (*Weinberg, supra,* 114 Cal.App.4th at p. 1087.) In *Vick v. DaCorsi* (2003) 110 Cal.App.4th 206 [1 Cal.Rptr.3d 626], the court held that a section 998 offer was valid under this exception, because the two plaintiffs, husband and wife, each had an equal undivided half-interest in the settlement proceeds. (*Vick,* at p. 212.) In *Weinberg,* by contrast, the court ruled that a section 998 offer did not fall within the exception, because the wife's claim was separate from (i.e., not derivative of) the husband's. (*Weinberg, supra,* 114 Cal.App.4th at p. 1087.)

To fall within the unity of interest exception, John Crane had to prove that Peterson, as an individual wrongful death plaintiff and as successor in interest suffered a "single, indivisible injury." (*Weinberg, supra,* 114 Cal.App.4th at p. 1087.) However, the survivor cause of action and the wrongful death claim seek different damages for very different injuries based on different legal rights and liabilities. (See, e.g., *Quiroz, supra,* 140 Cal.App.4th at p. 1279 [survivor cause of action pleads different injury than action for wrongful death].) The unity of interest exception does not apply.

### D. *Conclusion*

In sum, I conclude John Crane's section 998 offer was made to multiple parties, was not apportioned, but was conditioned on acceptance by all the offerees. I further conclude the unity of interests exception does not apply. Under these circumstances, the offer was fatally uncertain.

I would hold that John Crane's offer does not provide the foundation for a valid award of costs under section 998, subdivision (c). Because the majority concludes otherwise, I respectfully dissent.

Appellant's petition for review by the Supreme Court was denied October 31, 2007, S156654.