[Nos. B158894, B160783. Second Dist., Div. Seven. Jan. 7, 2004.]

MORTON M. WEINBERG et al., Plaintiffs and Respondents, v. SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

1076

COUNSEL

LaTorraca and Goettsch, Raymond H. Goettsch, and Scott K. Murch for Defendant and Appellant.

Evan D. Marshall, Ian Herzog and Amy Ardell for Plaintiffs and Respondents.

**OPINION**

**WOODS, J.**—These appeals began in an underinsured motorist (UIM) arbitration between appellant Safeco Insurance Company of America (Safeco) and respondent Morton Weinberg. Morton received an award well above the limits of his automobile policy with Safeco. After Safeco paid the policy limits, Morton and his wife, respondent Roberta B. Weinberg, sued Safeco for bad faith. Respondents lost, and judgment was entered for Safeco. When Safeco sought to recover its expert fees, the superior court found Safeco's joint Code of Civil Procedure section[1] 998 offer (998 offer) to compromise was invalid. Safeco appealed from the order granting the Weinbergs' motion to tax costs, i.e., Safeco's expert fees, contending its 998 offer was valid. We affirm that order.

Just before trial in the bad faith action, the court granted Morton's petition to have the arbitration award confirmed into a money judgment against Safeco. Safeco appealed from that judgment, which also awarded Morton certain costs and prejudgment interest. Safeco contends that the arbitration award should not have been confirmed as the arbitrator did not determine its liability to Morton, only the liability of the UIM to Morton, and that the court erred in awarding prejudgment interest and arbitration costs to Morton. We affirm that judgment.

## FACTUAL AND PROCEDURAL SYNOPSIS

I. *The Underlying UIM Arbitration*

From November 12, 1995, to May 12, 1996, Safeco insured the Weinbergs under an automobile policy of insurance. The policy provided uninsured motorist (UM) coverage, including UIM coverage, with bodily injury coverage limits of $250,000/$500,000. With respect to the UIM coverage, the policy stated that the bodily injury limits for UIM coverage are reduced by sums "[p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

On February 19, 1996, Morton was driving his Ford Explorer in heavy traffic on Interstate 10 when his vehicle was rear-ended by another vehicle which itself had been rear-ended by a vehicle driven by a UIM. Following the collision, Morton made a bodily injury claim to the UIM's carrier. Morton received $3,635 from that carrier for his claim.

On February 11, 1997, Morton demanded UIM arbitration with Safeco pursuant to the provisions in the policy. By mutual agreement, Morton's

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

demand was held in abeyance while he was undergoing treatment for injuries he claimed to have received in the February 19 collision.

Following Morton's treatment, the parties proceeded with discovery in preparation for the UIM arbitration. After the close of discovery, Morton served Safeco with a 998 offer in the amount of $246,365. Safeco did not accept the offer.

Thereafter, Safeco and Morton participated in binding UIM arbitration. The arbitrator rendered his award on March 3, 2000, finding that Morton had sustained $829,266.49 in damages as a result of the February 19 collision.

Under the policy, Safeco's maximum liability to Morton was the remaining UIM policy limits; accordingly, Safeco issued a check in the amount of $246,365 which represented the $250,000 UM/UIM policy limit, less the $3,635 received by Morton from the UIM's carrier. Safeco also paid Morton $7,915.06 in interest and costs.

Subsequently, Morton's counsel wrote to the arbitrator to try and recover additional costs and interest pursuant to section 998. Morton did not pursue that request.

II.  *Case No. BC237804 (Bad Faith Case)*

In October 2000, the Weinbergs commenced an action against Safeco based on its handling of Morton's UIM claim.

The Honorable James Chalfant summarily adjudicated the breach of contract, emotional distress and loss of consortium causes of action and the punitive damage claim in Safeco's favor. Only the bad faith and unfair competition causes of action remained.

Safeco served the Weinbergs with a joint 998 offer in the amount of $150,001. The Weinbergs allowed the offer to lapse.

A jury tried the bad faith cause of action, and the court concurrently tried the unfair competition cause of action. The jury and the court both found for Safeco, and judgment in Safeco's favor was entered on March 22, 2002.

After entry of the judgment, Safeco submitted a timely cost bill seeking expert witness fees under section 998. The court granted the Weinbergs' motion to tax on the ground the 998 offer was invalid as it had been jointly made.

Safeco timely appealed the order granting the motion to tax costs.[2]

### III. *Case No. BC 266899 (Arbitration Case)*

On January 25, 2002, Morton filed a petition seeking to confirm the arbitration award into a money judgment against Safeco. In its response, Safeco argued awards in UM/UIM arbitrations are not liability assessments against the insurer and therefore cannot be confirmed into money judgments.

At the hearing, the Honorable Jon Mayeda reported he would confirm the petition because he lacked jurisdiction to correct or vacate the award. At the court's direction, Morton submitted a proposed judgment to which Safeco objected.

Prior to entry of judgment, Morton submitted a costs memorandum, seeking expert costs in the arbitration and prejudgment interest on the arbitration award based on his 998 offer. Safeco moved to strike the costs memorandum as premature. Alternatively, Safeco argued that the arbitrator, not the court, had to award arbitration costs and that prejudgment interest was not recoverable in contractual arbitration. The court denied Safeco's motion and entered judgment for Morton in the amount of $1,145,693.97, representing the full amount of the arbitration award plus costs and prejudgment interest.[3]

Safeco moved for a new trial on the ground the Weinbergs had unsuccessfully tried to recover the arbitration award in the Bad Faith Case, and as the judgment against them in that case was now final, they were precluded from pursuing the same relief. The court denied the motion.

Safeco filed a timely notice of appeal from the judgment, the order denying the motion to tax costs and order denying the new trial motion.

### DISCUSSION

### I. *Arbitration Case (BC266899)*

#### A. *The court did not err in confirming the arbitration award.*

Appellant contends the court should not have confirmed the UIM arbitration award into a money judgment against it as its liability was not determined by the arbitrator. Respondents contend that by failing to timely seek

---

[2] The Weinbergs timely appealed the judgment, but subsequently abandoned their appeal.

[3] Because the judgment included prejudgment interest twice, the court corrected it nunc pro tunc to a total of $991,998.44.

correction or vacation of the arbitration award within 100 days of service of the award (§ 1288), appellant waived any claim the arbitrator erred or exceeded his authority.

"The statutory requirement for arbitration of uninsured motorist claims is contained in subdivision (f) of Insurance Code section 11580.2 which provides in pertinent part: 'The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. . . .' The word 'damages' in this provision means the damages which the insured is entitled to recover from the uninsured motorist, and the statute thus requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of damages. . . . Accordingly, where, as in the present case, the policy essentially restates the statutory language, arbitration is limited to issues relating to liability of the uninsured motorist to the insured . . . ; *it does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured.* . . . While the parties voluntarily may submit to arbitration issues other than those required by statute and the policy, 'the courts will not infer a voluntary submission of a nonstatutory issue in the absence of a clear showing that the parties so intended, either by actual litigation or argument of the issue . . . or by some other unambiguous conduct.' " (*Furlough v. Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 45–46 [249 Cal.Rptr. 703], citations & fn. omitted, italics added.)

The arbitration clause in the automobile insurance policy issued to respondents provided: "A. If we and an insured do not agree: [¶] 1. Whether that person is legally entitled to recover damages; or [¶] 2. As to the amount of damages which are recoverable by that insured; [¶] from the owner or operator of an uninsured motor vehicle, then the matter may be arbitrated. However, *disputes concerning coverage under this Part may not be arbitrated. . . .*" (Italics added.)

In addition to the policy language, in its response to respondents' petition to confirm the arbitration award, appellant's attorney submitted a declaration stating: "The only issues submitted to Judge Sheffield [the arbitrator] for arbitration were the underinsured motorist's liability to Weinberg as a result of the February 19, 1996 collision and Mr. Weinberg's damages, if any. Judge Sheffield was not asked to decide what SAFECO's liability, if any, to Mr. Weinberg was. In fact, Judge Sheffield was not informed of the UIM limits in Weinberg's policy with SAFECO."

The primary issue in dispute at the arbitration was the extent of Morton's injuries in light of the minimal damage caused to his car by the accident. The arbitrator was not asked to determine the amount owed to Morton by appellant. However, the arbitrator ruled Morton "has preponderated and is entitled to significant damages." The award provided: "Accordingly, Mr. Weinberg is awarded the following as all special and general damages suffered by him as a result of the subject accident: [¶] 1. Past and future damages of $113,230.49. [¶] 2. Lost earnings of $316,036.00. [¶] 3. For general damages, [Morton] requested $400,000. That sum is reasonable under the circumstances and is awarded. [¶] Total Award: $829.266.49." (Fns. omitted.)

■ In its response to the petition to confirm, appellant argued the arbitrator only established the liability of the UIM to Morton and did not establish the extent of appellant's obligation to pay Morton. The response did not request the court either to correct or vacate the award. (See § 1285.8.) One ground for relief is that the arbitrator exceeded his or her power (§§ 1286.2, subd. (a)(4) [vacation of award] & 1286.6, subd. (b) [correction of award].) However, such relief must be requested within 100 days of service of the award. (§ 1288.)

The court indicated it would confirm the arbitration award because, in the absence of a request to correct or vacate, it had no jurisdiction to do anything else. Section 1286 provides: "the court shall confirm the award as made, . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding."

■ Although this court originally concluded the trial court did not confirm the award as made when it entered judgment, after granting a petition for rehearing and giving the matter due consideration, that conclusion depended on our interpretation of what the arbitrator should have done, but not necessarily what the arbitrator intended to do. The actual language of the award is an award of damages. In essence, both below and on appeal, Safeco did not argue the arbitrator exceed his powers by awarding damages, but instead argued the arbitrator only issued a limited declaration of rights. Resolving such an issue of interpretation is properly done through a request for correction or vacation made to either the arbitrator or the trial court, not saved for argument on appeal. (*Louise Gardens of Encino Homeowners Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 659 [98 Cal.Rptr.2d 378] ["A party who fails to timely file a petition to vacate under section [1286.2] may not thereafter attack that award by other means on grounds which would have supported an order to vacate"].)

In the case at bar, Morton was awarded a windfall amount of damages far in excess of the amount of damages for which he paid premiums. At oral

argument, defense counsel suggested that such awards are common, and in a letter to this court, appellant impliedly acknowledged the nature of UM and UIM arbitration awards is unclear and insurers have had to petition courts to vacate or correct awards in excess of policy limits.

■ Unless and until the Legislature provides for a mechanism to address what is to be done when an arbitrator is not asked to determine the insurer's liability, but issues an award of damages, it is incumbent upon the parties to see that the arbitrator does not make an award of damages, but instead issues a declaration of liability or of rights. This court realizes that often the insured will not move to confirm the entire award against the insurer, but will accept payment of the policy limits from the insurer and then seek to collect the balance from the UIM. However, if the arbitrator makes an award of damages in excess of the policy limits, then the insurer must move in a timely manner, either before the arbitrator or in court, to vacate the award or correct it or risk having the court confirm the entire award upon a motion to confirm by the insured.

B. *The court did not err in awarding prejudgment interest and costs.*

In the Arbitration Case, concluding that appellant failed to obtain a more favorable result in the arbitration than Morton's section 998 offer, the court awarded him prejudgment interest of $153,246.64 under Civil Code section 3291 and costs of $9,485.31 under section 998. Appellant contends the court erred by awarding interest and costs, as Civil Code section 3291 does not apply to contractual arbitration. (*Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 126 [3 Cal.Rptr.2d 666, 822 P.2d 374]; *Woodard v. Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 666–667 [217 Cal.Rptr. 514]) Appellant acknowledges that subsequent to those cases the Legislature amended section 998 to apply to arbitrations, but argues that because the Legislature did not amend Civil Code section 3291, it does not apply to contractual arbitrations.

■ The court held In the instant case the court entered judgment confirming the arbitration award pursuant to section 1287.4. Citing *Caro v. Smith* (1997) 59 Cal.App.4th 725 [69 Cal.Rptr.2d 306], appellant argues section 3291 is applicable to contractual arbitration. In *Caro*, the arbitrator had determined Caro was entitled to statutory costs. (*Id.*, at p. 736.) prejudgment interest and costs were available because the offering party recovered a more favorable judgment than her 998 offer; the court reasoned that even though the arbitration award was not a judgment within the meaning of Civil Code section 3291, the court's judgment entered pursuant to section 1287.4 was. (*Caro v. Smith, supra,* 59 Cal.App.4th at p. 736.) The court distinguished another of its cases holding the offering party was not entitled to prejudgment

interest on the basis the parties had agreed to an alternate procedure to section 1287.4, meaning there was no judgment, and distinguished *Woodward*, in which the arbitrators had denied prejudgment interest. (*Caro v. Smith, supra,* 59 Cal.App.4th at p. 737.) Even though the arbitrator here did not determine Morton was entitled to costs, he did not determine Morton was not entitled to costs. Thus, respondents were entitled to prejudgment interest. (See *ibid.* ["Our holding comports with the language of the statutes . . . as well as the public interest in encouraging settlement, either before arbitration, or following arbitration and before the entry of judgment on an arbitration award"].)

■ Furthermore, citing section 998, subdivision (d), appellant posits it was the function of the arbitrator, not the court, to award costs. During the arbitration, citing *Caro*, appellant stated Morton could not request an order for costs and prejudgment interest from the arbitrator. Thus, it is judically estopped from attacking the order on the basis the arbitrator should have made the award. (*Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086, 1092 [50 Cal.Rptr.2d 119].) Moreover, subdivision (d) of section 998 provides, "the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses."

■ Appellant contends that under the principles of res judicata and collateral estoppel, the judgment in the Bad Faith Case previously determined appellant was not liable to Morton for the full amount of the arbitration award. (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828–829 [88 Cal.Rptr.2d 366, 982 P.2d 229]; *Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 724–725 [285 P.2d 636].) Appellant moved for a new trial on the basis the Weinbergs had unsuccessfully tried to recover the arbitration award in the Bad Faith Case. As noted by respondents, the decision in the civil action could have no preclusive effect upon an earlier arbitration award which is a final determination entitled to preclusive effect. (See *Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 758–759 [6 Cal.Rptr.2d 27].) Such an award can only be attacked by a timely motion to vacate or correct. (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc., supra,* 82 Cal.App.4th at p. 659.) Thus, the court properly denied the new trial motion.

Accordingly, the judgment, including costs and prejudgment interest, is affirmed.

II. *Bad Faith Case (BC237804)*

Appellant made an offer to respondents "to take judgment in the sum of $150,001.00 against it, with each party to bear their own costs." After

judgment was entered in appellant's favor in this case, it sought to recover its expert fees under section 998. The court denied recovery of the fees, finding appellant's joint 998 offer was invalid. Noting that it was an absolute prevailing party, appellant contends its joint offer was valid, as recent cases have declined to mechanically apply a rule that renders void any joint offer without first examining whether it can be determined that the party claiming costs has in fact obtained a more favorable judgment. (*Deocampo v. Ahn* (2002) 101 Cal.App.4th 758, 777, fn. 15 [125 Cal.Rptr.2d 79].)

"In interpreting section 998, [the] court has placed squarely on the offering party the burden of demonstrating that the offer is a valid one under section 998. . . . The corollary to this rule is that a section 998 offer must be strictly construed in favor of the party sought to be subjected to its operation. . . . Further, while the statute contemplates that an offer made pursuant to its terms may properly include nonmonetary terms and conditions, the offer itself must, nonetheless, be *unconditional*. . . . Thus, for example, an offer to two or more parties, which is contingent upon all parties' acceptance, is not a valid offer under the statute. . . . Finally, our Supreme Court has held that the legislative purpose of section 998 is generally better served by 'bright line rules' that can be applied to these statutory settlement offers—at least with respect to the application of contractual principles in determining the validity and enforceability of a settlement agreement." (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799 [101 Cal.Rptr.2d 167], citations & fn. omitted.)

Respondents contend the offer was not valid as it failed to discriminate between them and was undivided and nonapportioned. (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 112 [30 Cal.Rptr.2d 486] ["[U]nder interpretative decisions, a section 998 offer made to multiple parties is valid only if it is expressly apportioned among them and not conditioned on acceptance by all of them. . . . A single, lump sum offer to multiple plaintiffs which requires them to agree to apportionment among themselves is not valid" (citations omitted)].)·

"To be effective, an offer to multiple parties under section 998 must be explicitly apportioned among the parties to whom the offer is made so that each offeree may accept or reject the offer individually." (*Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154, 157 [133 Cal.Rptr.2d 339]; see also *Wickware v. Tanner* (1997) 53 Cal.App.4th 570, 577 [61 Cal.Rptr.2d 790] [" '[I]t is in the public interest that each [plaintiff] be given the opportunity to accept and consummate the offer made him' "]; *Hurlbut v. Sonora Community Hospital* (1989) 207 Cal.App.3d 388, 410 [254 Cal.Rptr. 840] [Where the plaintiffs' interests were not identical, the court reasoned: "There was no single, indivisible injury to evaluate for settlement purposes"].)

■ Appellant attempts to refute the position its offer was conditional by arguing that because respondents were husband and wife, her claim was derivative as it was based on the handling of his claim and as all the causes of action were based on the same conduct, the lack of apportionment did not hamper respondents' evaluation of appellant's offer. An exception to the general rule that a single lump sum offer to multiple plaintiffs is not a valid 998 offer exists where the plaintiffs have a unity of interest such that there is a single, indivisible injury. (See *Santantonio v. Westinghouse Broadcasting Co., supra,* 25 Cal.App.4th 102, 114.)

Recently, in *Vick v. DaCorsi* (2003) 110 Cal.App.4th 206 [1 Cal.Rptr.3d 626], this court held a 998 offer was valid even though it had not been apportioned between the two plaintiffs. The Vicks sued the DaCorsis for breach of contract and fraud in relation to the Vicks' purchase of a home. The DaCorsis made a 998 offer to the Vicks jointly, which the Vicks rejected. After the jury found in favor of the DaCorsis, they sought to recover their expert fees. The trial court denied recovery on the ground the 998 offer had not been separately apportioned as to each plaintiff and had been conditioned on joint acceptance. This court determined the defendants could not allocate the offer between the plaintiffs as each plaintiff had an equal, undivided half-interest in the lawsuit and would have the same interest in the settlement proceeds, because the complaint did not allege any occurrence involving only one of the Vicks nor did it seek damages on behalf of one of the Vicks. (*Vick,* at p. 212.)

■ Even though Roberta's claim was based on Safeco's alleged mishandling of Morton's UIM claim, that is a separate, not derivative claim. (See *Delos v. Farmers Insurance Group* (1979) 93 Cal.App.3d 642, 659 [155 Cal.Rptr. 843] [" There are no public policy or doctrinal considerations that preclude [the husband] from having an independent cause of action against defendants. He was a party to the insurance contract and the effect upon him of the improper denial of his wife's claim was reasonably foreseeable. . . . It certainly can be expected that when a husband or wife is injured in an uninsured motorist accident and the claim for that accident is wrongfully denied by their insurer, both husband and wife will incur expenses not necessarily limited to attorney fees, and that each may suffer varying degrees of emotional distress" (citation omitted)].)

Respondents did not have a single, indivisible injury. Thus, appellant's joint 998 offer was not valid as it was not apportioned among respondents.

## DISPOSITION

The order granting respondents' motion to tax costs in case number BC 237804 is affirmed. The judgment confirming the arbitration award, including

the costs and prejudgment interest, and the order denying appellant's motion for new trial in case number BC266899 are affirmed. Respondents to recover costs on appeal.

Perluss, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied February 4, 2004, and appellant's petition for review by the Supreme Court was denied March 24, 2004.