[No. B233137. Second Dist., Div. Three. Apr. 24, 2012.]

NASSEEM FARAG et al., Plaintiffs and Appellants, v. ARVINMERITOR, INC., Defendant and Respondent.

374

COUNSEL

The Arkin Law Firm, Sharon J. Arkin; Farrise Firm and Simona A. Farrise for Plaintiffs and Appellants.

Hawkins Parnell Thackston & Young, Edward M. Slaughter and Lauren E. Wood for Defendant and Respondent.

OPINION

**KLEIN, P. J.**—Plaintiffs and appellants Nasseem Farag (Nasseem) and Sanna Farag (Sanna) (collectively, the Farags) appeal a postjudgment order denying their motion to tax expert witness costs sought by defendant and respondent ArvinMeritor, Inc. (ArvinMeritor), pursuant to Code of Civil Procedure section 998 after trial.[1,2]

The Farags contend a section 998 offer made jointly to a husband and wife is void.

Guided by *Barnett v. First National Ins. Co. of America* (2010) 184 Cal.App.4th 1454 [110 Cal.Rptr.3d 99] (*Barnett*), we conclude a section 998 offer may be made jointly to spouses because, under California's community property law, a cause of action for personal injury damages is community property (Fam. Code, § 780) and under Family Code section 1100, subdivision (a), either spouse has the power to accept the offer on behalf of the community. Therefore, the order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Nasseem, a 58-year-old man, was diagnosed with mesothelioma, a cancer linked to asbestos exposure.

---

[1] We refer to the individual appellants by their first names for purposes of clarity and not out of disrespect. (*In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306].)

[2] All statutory references are to the Code of Civil Procedure, unless otherwise specified.

Nasseem began working as a mechanic shortly after immigrating to the United States in 1981. Later, Nasseem purchased his own gas station in Ontario, California, where he continued to perform repair work on vehicles.

Following Nasseem's diagnosis, he and his wife, Sanna, sued various defendants alleging his exposure to asbestos-containing vehicles and vehicle parts. The complaint sought damages for personal injury and loss of consortium. Numerous defendants were named, including ArvinMeritor, whose predecessor, Rockwell International Corporation, was a manufacturer and distributor of asbestos-containing brake linings during the relevant years.

Prior to trial, ArvinMeritor served a section 998 offer to compromise on the Farags. ArvinMeritor offered the Farags one cent ($0.01) in exchange for a dismissal with prejudice and a mutual waiver of costs. The offer was made jointly to the Farags and did not specify that the offer was capable of acceptance by either plaintiff without the consent of the other. The offer was predicated on ArvinMeritor's assertion there was no evidence that Nasseem had been exposed to any ArvinMeritor product. The Farags did not accept the offer and proceeded to trial against various defendants, including ArvinMeritor.

The jury returned a verdict in favor of ArvinMeritor.

ArvinMeritor then submitted a memorandum of costs which included a request for $11,033 for expert witness fees as well as $2,173 in expert travel costs, based on the rejected section 998 offer.

The Farags filed a motion to tax those costs, as well as other costs requested by ArvinMeritor.

The trial court partially granted the motion to tax costs, but denied the Farags' motion to tax the expert witness fees and expert travel costs.

The Farags filed a timely notice of appeal from the postjudgment order on the motion to tax costs.

## CONTENTIONS

The Farags do not challenge the defense verdict, which absolved ArvinMeritor of any liability. The Farags contend an unallocated joint section 998 offer to a husband and wife is void in the absence of a showing the offer provides fair and reasonable value. The Farags seek reversal to the extent the judgment awarded ArvinMeritor expert witness fees of $11,033 and expert travel costs of $2,173.

## DISCUSSION

### 1. *The pertinent statute.*

Section 998 states in relevant part: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] (b) Not less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time. The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate acceptance of the offer by signing a statement that the offer is accepted. . . . [¶] . . . [¶] (2) If the offer is not accepted prior to trial . . . or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration. [¶] . . . [¶] (c)(1) *If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award,* the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court . . . in its discretion, *may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses* . . . actually incurred and reasonably necessary in . . . preparation for trial or . . . during trial . . . of the case by the defendant." (Italics added.)

### 2. *Standard of appellate review.*

The Farags contend the trial court erred in denying their motion to tax costs as to the expert witness costs awarded under section 998.

The trial court's ruling as to the application of section 998, subdivision (c)(1), is reviewed de novo. (*Barnett, supra,* 184 Cal.App.4th at p. 1458 [denial of defendant's request for expert witness fees under § 998, subd. (c)(1)].)

### 3. *Pertinent case law.*

#### a. *Joint section 998 offer made to coplaintiffs.*

In *Meissner v. Paulson* (1989) 212 Cal.App.3d 785 [260 Cal.Rptr. 826] (*Meissner*), a joint offer was made to the two plaintiffs. To be accepted, both plaintiffs had to consent to settlement and agree as to apportionment of the settlement offer between them. (*Id.* at pp. 790–791.) The *Meissner* court concluded that in situations such as the one before it, "[p]laintiffs would be

required to second-guess all joint offers to determine whether a failure to reach agreement with coplaintiffs would cause a risk of section 998 costs against them. We believe the Legislature did not intend to place this burden on offerees. To enforce the purpose of section 998, we find as a matter of law *only an offer made to a single plaintiff, without need for allocation or acceptance by other plaintiffs, qualifies as a valid offer under section 998.*" (*Id.* at p. 791, italics added.)

> b. *Section 998 offer made jointly to husband and wife.*

In *Vick v. DaCorsi* (2003) 110 Cal.App.4th 206 [1 Cal.Rptr.3d 626] (*Vick*), decided by Division Seven of this court, the plaintiffs, husband and wife, bought a home from the defendants. Shortly after the purchase, the plaintiffs discovered the home had been improved illegally. They sued the defendants for breach of contract and fraud. Prior to trial, the defendants made the plaintiffs an offer to settle pursuant to section 998. The plaintiffs did not accept the offer. The defendants prevailed at trial. They then filed a memorandum of costs in which they sought to recover expert witness fees. The trial court denied recovery of the fees on the ground the defendants' section 998 offer was not apportioned between the two plaintiffs and was conditioned on their joint acceptance. (*Vick, supra,* at pp. 208–209.)

On appeal, the *Vick* court noted *Meissner* attempted to address problems which arise when a defendant makes an unallocated offer to multiple plaintiffs which is conditioned on acceptance by them all. (*Vick, supra,* 110 Cal.App.4th at p. 211.) If two or more plaintiffs obtain a money judgment, it may be impossible for the trial court to determine whether any particular plaintiff received a judgment less favorable than the settlement offer. (*Ibid.*) Further, a joint offer places a plaintiff who wishes to settle at the mercy of one who does not, frustrating section 998's goal of encouraging settlement. (*Ibid.*)

*Vick* reasoned, "[n]one of these concerns, however, apply to a case such as the one before [it] where the plaintiffs are husband and wife; their suit arises out of their purchase of community property; they are suing on choses in action which are community property; and their recovery would be community property." (*Vick, supra,* 110 Cal.App.4th at p. 212, fn. omitted.) The plaintiffs sought no recovery peculiar to one of them; either or both of them could have accepted the offer on behalf of the community. (*Ibid.*) "Indeed, requiring married couples with a common interest in the chose in action be allowed to accept or reject joint offers individually could result in the plaintiffs gaming the system by having one spouse accept the offer and the other reject it. 'That way they could both benefit if the judgment is greater than the offer, and could both avoid incurring costs . . . if it is less.' " (*Id.* at

pp. 212–213, fn. omitted.) Accordingly, *Vick* concluded the defendants' section 998 offer to the married plaintiffs was valid. (*Id.* at p. 213.)

In *Weinberg v. Safeco Ins. Co. of America* (2004) 114 Cal.App.4th 1075 [8 Cal.Rptr.3d 224] (*Weinberg*), also decided by Division Seven, the husband and his insurer participated in underinsured motorist arbitration. Following an award above the policy limits, the defendant insurer paid the policy limits. The husband and his wife then sued the defendant for bad faith but lost. The defendant sought expert witness fees under section 998, but the trial court ruled the defendant's joint offer was invalid and denied the request. (*Id.* at pp. 1079–1080, 1085–1086.)

On appeal, the defendant contended its joint offer was valid because the plaintiffs were husband and wife and her claim was derivative as it was based on the handling of his claim, so that the lack of apportionment did not hamper the plaintiffs' evaluation of the defendant's offer. (*Weinberg, supra,* 114 Cal.App.4th at p. 1087.) *Weinberg* disagreed, stating: " 'It certainly can be expected that when a husband or wife is injured in an uninsured motorist accident and the claim for that accident is wrongfully denied by their insurer, both husband and wife will incur expenses not necessarily limited to attorney fees, and that each may suffer varying degrees of emotional distress.' " (*Ibid.*) Since the husband and wife *"did not have a single, indivisible injury,"* the defendant's unapportioned joint offer was invalid and it could not recover expert witness fees under section 998. (*Weinberg, supra,* at p. 1087, italics added.)

In *Barnett*, also an insurance bad faith case, the plaintiffs/insureds were a married couple. Prior to trial, the insurer served the insureds with a joint offer to compromise which they rejected. The insurer prevailed at trial and subsequently sought costs, including expert witness fees. The plaintiffs filed a motion to tax costs; they challenged the claim for expert witness fees on the ground section 998, subdivision (c)(1), does not apply where a single offer is made to two plaintiffs. The trial court agreed with the plaintiffs' position and granted the plaintiffs' motion to tax costs. (*Barnett, supra,* 184 Cal.App.4th at pp. 1457–1458.)

On appeal, Division Seven in *Barnett* disapproved its earlier decision in *Weinberg. Barnett* reasoned: "Under the holding of *Weinberg,* defendant's joint settlement offer to plaintiffs was invalid. Like the husband and wife in *Weinberg,* the Barnetts did not have a single, indivisible injury. Each could have suffered varying degrees of emotional distress as a result of the allegedly bad faith handling of their insurance claim even though the underlying dispute with defendant related to a single policy covering damage to the residence in which they had a common interest. (See *Weinberg v. Safeco*

*Ins. Co. of America, supra,* 114 Cal.App.4th at p. 1087.) [¶] *As defendant points out, however, with certain exceptions not applicable here, a cause of action for damages is community property, as is any recovery on that cause of action. (Vick v. DaCorsi, supra,* 110 Cal.App.4th at p. 212 & fn. 35; cf. *Parker v. Walker* (1992) 5 Cal.App.4th 1173, 1182–1183 [6 Cal.Rptr.2d 908] ['[a] cause of action to recover money in damages, as well as money recovered in damages, is a chose in action and therefore a form of personal property'].) This is true whether the cause of action is for injury to real property or financial interests or for personal injuries. (Fam. Code, § 760.) Thus, whether or not the injuries claimed in a lawsuit by a husband and wife are 'indivisible' or 'separate,' there is no reason to require a settlement offer to be made separately to each spouse to be valid under section 998. '[U]nlike an offer expressly conditioned on acceptance by all plaintiffs, the offer in this case did not have to be accepted by both [spouses] to be effective.* Family Code section 1100, subdivision (a) places "management and control of the community personal property" in "either spouse." Thus either [spouse] could have accepted [the defendant's] offer on behalf of the community.' *(Vick, supra,* at p. 212.) Moreover, a 'joint' settlement offer made to husband and wife need not be allocated between them; the spouses have equal interests in all the proceeds. *(Vick,* at p. 212.) Thus, the apportionment problem and the potential difficulty of determining whether an individual plaintiff received a judgment more or less favorable than his or her share of the defendant's settlement offer, addressed in *Meissner v. Paulson, supra,* 212 Cal.App.3d at pages 790 through 791, simply does not exist." *(Barnett, supra,* 184 Cal.App.4th at p. 1460, fn. omitted, italics added.)[3]

*Barnett* explained: "*In reaching the contrary conclusion in* Weinberg, *we did not fully address the effect of community property law on the determination whether a settlement offer made jointly to a husband and wife is valid under section 998,* apparently because this point was not raised or briefed on appeal by either party. Now that we have fully considered the issue, however, we conclude our analysis in *Weinberg* . . . was mistaken and will not follow it in the future." *(Barnett, supra,* 184 Cal.App.4th at p. 1460, italics added.)[4]

4. *The Farags failed to properly raise the issue in the trial court in the first instance.*

The record reflects that although the Farags filed a motion to tax costs based on ArvinMeritor's section 998 offer, the argument they are now raising

---

[3] *Barnett* noted, "One spouse who believes the second spouse has improperly accepted a settlement offer that affects the rights of both the husband and wife to a community asset may have a claim for breach of fiduciary duty. (See Fam. Code, § 1100, subd. (e).)" *(Barnett, supra,* 184 Cal.App.4th at p. 1460, fn. 15.)

[4] In the instant case, ArvinMeritor served its section 998 offer on the Farags on August 5, 2010, after the decision in *Barnett* had become final.

on appeal, i.e., that *"a section 998 offer made jointly to a husband and wife is void,"* was not presented below. Rather, the Farags' argument below was that ArvinMeritor was not entitled to recover expert witness fees because "its section 998 demand was inadequate and not made in good faith."

With respect to the *format* of ArvinMeritor's section 998 offer, the Farags' motion to tax costs merely asserted: "In this case, ArvinMeritor's Section 998 offer was simply a request for dismissal. It was not made in required format *(i.e. to plaintiffs separately)* and was merely a boilerplate request precisely 'for the sole purpose of later recovering large expert witness fees.' As such, all expert costs should be denied outright." (Italics added.)

Thus, the issue which is the focus of the Farags' appeal, relating to the validity of a section 998 offer made jointly to spouses, appeared merely within parentheses in a single sentence of their motion to tax costs, unsupported by any citation to authority. Therefore, the issue did not merit any discussion, either by ArvinMeritor or by the trial court. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [91 Cal.Rptr.3d 726] [issue not supported by reasoned argument and citations to authority may be treated as waived].)

■ " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings . . . where an objection could have been, but was not, presented to the lower court by some appropriate method. [Citations.]' (9 Witkin, Cal. Procedure (3d ed. 1985). Appeal, § 311, p. 321.)" (*Guardianship of Stephen G.* (1995) 40 Cal.App.4th 1418, 1422 [47 Cal.Rptr.2d 409].) At the time the Farags were litigating their motion to tax costs in the trial court in 2011, all the cases discussed above (*Meissner, Vick, Weinberg* and *Barnett*) were on the books. No reason appears why the Farags could not have duly raised the issue in the trial court in the first instance. Therefore, this court may treat the issue as having been waived.

> 5. *We decline to depart from* Barnett, *which addressed the impact of community property principles on section 998 offer made jointly to spouses.*

Leaving aside the issue of waiver, the Farags contend *Barnett* was wrongly decided and should not be followed. The argument lacks merit.

As noted, in *Weinberg*, Division Seven held a defendant's joint offer to married plaintiffs was invalid because the husband and wife "did not have a single, indivisible injury." (*Weinberg, supra*, 114 Cal.App.4th at p. 1087.)

■ In *Barnett*, Division Seven reached the opposite conclusion based on its analysis of community property principles. *Barnett* stated in pertinent part,

"a cause of action for damages is community property, as is any recovery on that cause of action. [Citations.] . . . Thus, whether or not the injuries claimed in a lawsuit by a husband and wife are 'indivisible' or 'separate,' there is no reason to require a settlement offer to be made separately to each spouse to be valid under section 998. '[U]nlike an offer expressly conditioned on acceptance by all plaintiffs, the offer in this case did not have to be accepted by both [spouses] to be effective. *Family Code section 1100, subdivision (a) places "management and control of the community personal property" in "either spouse."* Thus either [spouse] could have accepted [the defendant's] offer on behalf of the community.' [Citation.]" (*Barnett, supra,* 184 Cal.App.4th at p. 1460, italics added.)

*Barnett* continued, "In reaching the contrary conclusion in Weinberg, *we did not fully address the effect of community property law on the determination whether a settlement offer made jointly to a husband and wife is valid under section 998,* apparently because this point was not raised or briefed on appeal by either party. *Now that we have fully considered the issue,* however, we conclude our analysis in *Weinberg* . . . was mistaken and will not follow it in the future." (*Barnett, supra,* 184 Cal.App.4th at p. 1460, italics added.)

■ Notwithstanding the above, the Farags contend the *Barnett* court's community property analysis was incomplete because it only addressed Family Code section 1100, *subdivision (a)* (placing management and control of community personal property in either spouse), and overlooked Family Code section 1100, *subdivision (b)* (spouse may not dispose of community personal property for less than fair and reasonable value without written consent of other spouse).

■ The Farags' criticism *of Barnett'*s analysis is unpersuasive. *Barnett* did speak to the issue, stating, "One spouse who believes the second spouse has improperly accepted a settlement offer that affects the rights of both the husband and wife to a community asset may have a claim for breach of fiduciary duty. (See Fam. Code, § 1100, subd. (e).)" (*Barnett, supra,* 184 Cal.App.4th at p. 1460, fn. 15.) However, a third party such as ArvinMeritor has no duty to enforce a managing spouse's compliance with his or her fiduciary duties.

Further, as the pre-*Weinberg* decision in *Vick* observed, "Indeed, requiring married couples with a common interest in the chose in action be allowed to accept or reject joint offers individually could result in the plaintiffs gaming the system by having one spouse accept the offer and the other reject it. 'That way they could both benefit if the judgment is greater than the offer, and could both avoid incurring costs . . . if it is less.' " (*Vick, supra,* 110

Cal.App.4th at pp. 212–213, fn. omitted.) Accordingly, *Vick* concluded the defendants' section 998 offer to the married plaintiffs was valid. (110 Cal.App.4th at p. 213.)

In sum, the Farags have not shown why this court should depart from *Barnett*'s holding that either spouse may accept a section 998 offer on behalf of the community.

■ Here, the Farags' causes of action—Nasseem's cause of action for personal injury and Sanna's cause of action for loss of consortium—arose during the marriage and constituted community property. (Fam. Code, § 780; *Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1034 [40 Cal.Rptr.2d 744].) Therefore, ArvinMeritor's section 998 offer, which it made to the Farags jointly, was valid.

## DISPOSITION

The postjudgment order is affirmed. The parties shall bear their respective costs on appeal.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 14, 2012, and appellants' petition for review by the Supreme Court was denied July 11, 2012, S203082. Cantil-Sakauye, C. J., did not participate therein.