Filed 7/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HELENE STORM,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>THE STANDARD FIRE<br>INSURANCE COMPANY,<br><br>　　Defendant and Respondent. | B299277<br>(Los Angeles County<br>　Super. Ct. No. BS173538) |

APPEAL from an order of the Superior Court of Los Angeles County, Georgina Torres Rizk, Judge. Reversed and remanded, with directions.

Robert Alan Sheinbein for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Zubin Farinpour and Mae G. Alberto for Defendant and Respondent.

This appeal emanates from an underinsured motorist arbitration between appellant Helene Storm and her insurer, respondent the Standard Fire Insurance Company (Standard Fire). During the pendency of arbitration, Storm served a Code of Civil Procedure section 998 offer to compromise her claim,[1] which Standard Fire did not accept. Following a two-day hearing, the arbitrator awarded Storm damages exceeding her section 998 offer.

Storm petitioned the trial court to have the arbitration award confirmed as a judgment. She also requested an award for arbitration and post-arbitration costs as a prevailing party under sections 998 and 1293.2. Because the arbitration award did not reference costs, the court confirmed the arbitration award without costs, but suggested Storm could request costs at a later time. When Storm subsequently filed a memorandum of costs in the trial court, Standard Fire filed a motion to tax costs and argued that the parties' insurance agreement provided for the division of costs incurred during arbitration. The court agreed that the insurance agreement precluded recovery of costs. In light of that finding, the court granted the motion to tax and struck Storm's memorandum of costs in its entirety.

On appeal, Storm contends that the insurance agreement did not preclude her from recovering under section 998 the costs she incurred during the arbitration, or from recovering under section 1293.2 the costs she incurred during the judicial proceedings to confirm the

---

[1]     Unspecified statutory references are to the Code of Civil Procedure.

arbitration award. In response, Standard Fire argues that the arbitration provisions of the policy precluded recovery of arbitration costs under section 998 (it does not mention post-arbitration costs under section 1293.2), and that in any event Storm's failure to request arbitration costs from the arbitrator precluded recovery from the trial court.

We conclude that the relevant policy language, which stated that "[e]ach party will . . . [p]ay the expenses it incurs [in arbitration]" and "[b]ear the expenses of the arbitrator equally," does not preclude the recovery under section 998 of arbitration costs, or the recovery under section 1293.2 of post-arbitration costs. In short, specifying how the costs are to be paid in first instance says nothing about whether such costs may be recouped later under the cost-shifting provisions of sections 998 or 1293.2.

We further conclude that the insurance policy strictly limited the decisional authority of the arbitrator to two issues—Storm's entitlement to damages, and the amount thereof. It did not give the arbitrator the power to award costs. Thus, we find the decision in *Heimlich v. Shivji* (2019) 7 Cal.5th 350 (*Heimlich*) distinguishable. The arbitration agreement in that case granted the arbitrator powers broad enough to encompass an award of costs, and thus the failure to request costs from the arbitrator precluded recovery. That holding does not apply here, given the very limited issues that the parties agreed to submit to arbitration. Accordingly, we reverse the trial court's order striking Storm's memorandum of costs and remand the matter with directions

3

for the trial court to consider whether the costs as claimed by Storm are recoverable within the meaning of sections 998 and 1293.2.

## FACTUAL AND PROCEDURAL BACKGROUND

Storm was injured after the car she was driving was struck by another motorist. When the motorist's insurer paid a policy limit lower than Storm's own insurance coverage, she filed an underinsured motorist claim with her insurer, Standard Fire.

Standard Fire disputed the amount of Storm's claimed damages. The parties arbitrated the claim based on Storm's uninsured motorist insurance agreement with Standard Fire. The insurance agreement set forth numerous paragraphs under a heading entitled "ARBITRATION." The first paragraph stated that if Standard Fire and Storm did not agree "1. Whether [Storm] is legally entitled to recover damages under this coverage; or [¶] 2. As to the amount of damages," the matter would be settled by an arbitrator, whose decision would be binding as to the legal entitlement of damages and the amount thereof. The second paragraph provided that "[e]ach party will: [¶] 1. Pay the expenses it incurs; and [¶] 2. Bear the expenses of the arbitrator equally."

During the pendency of arbitration, Storm served Standard Fire a section 998 offer to compromise her claim for $195,000. The offer expired without Standard Fire's acceptance, and the matter went to arbitration. Following a hearing, the arbitrator awarded Storm $219,976.08 for past medical and general damages.

Storm filed a petition in the superior court to confirm the arbitration award, and for an award of an unspecified amount of costs

4

Storm had incurred during the arbitration and post-arbitration proceedings. Standard Fire opposed the petition, and argued that it was an improper attempt to confirm costs because Storm had not requested costs from the arbitrator, and the award did not reference costs. In her reply, Storm argued that the arbitration was limited to ascertaining the amount of recoverable damages exclusive of costs. The court granted the petition confirming the arbitration award "without reference to the costs requested" by Storm, but suggested that Storm could "determine whether to bring any additional motion or file anything else." The court entered judgment confirming the award, without costs, on April 10, 2019.

Storm subsequently filed a memorandum of costs totaling $39,960.02 and a motion to augment the judgment with costs. The requested costs were for filing fees for Storm's petition to confirm the arbitration award and motion to augment the judgment ($123.30); expert fees of four doctors who testified at the arbitration ($23,450); court reporter and interpreter fees incurred during the arbitration ($525 and $335); electronic filing and service fees ($31.20); and Storm's portion of the arbitrator's fee ($14,793.75).

Standard Fire filed a motion to tax costs and an opposition to the motion to augment the judgment. It asserted that Storm was precluded from recouping any costs because the insurance agreement provided that each party "will pay the expenses it incurs."

Storm opposed the motion to tax costs and argued that the insurance agreement did not bar recovery of costs. In the alternative, Storm argued the policy language was contrary to the statutory right of

5

prevailing parties to recoup costs under sections 998, 1032, 1033.5, 1293.2, and Civil Code section 3291.

In its reply, Standard Fire asserted that the Supreme Court's recent decision in *Heimlich, supra,* 7 Cal.5th 350, precluded Storm from recovering costs because she failed to request them from the arbitrator in the first instance. As we shall discuss, the *Heimlich* court held that when the parties do not limit the issues to be arbitrated, the party seeking arbitration costs must first request them from the arbitrator prior to requesting them from the trial court. (*Id.* at p. 358.)

On May 24, 2019, the court granted Storm's motion to augment the judgment with costs "subject to a hearing on [Standard Fire's] motion to tax." At the motion to tax hearing on July 3, 2019, Storm argued that the insurance agreement was silent on the right to recover costs as stated in sections 998 and 1293.2, and that she did not waive such a right. To the extent the court interpreted the language to bar recovery of costs, Storm argued the language was unenforceable because it defeated her reasonable expectation and constituted an unduly oppressive provision in violation of public policy. Standard Fire suggested that while section 998 applied to judicial arbitrations, it did not apply to contractual arbitrations ("the situation we're dealing with here is a contractual arbitration").

Following argument of counsel, the court granted the motion to tax costs and struck Storm's memorandum of costs in its entirety. The court found the policy language requiring each party to pay their own

6

fees or expense was "consistent" with section 1284.2.[2]  In light of that finding, the court did not consider whether the requested costs were reasonable or necessarily incurred within the meaning of sections 998 or 1293.2.  The court entered an amended judgment on July 22, 2019.

Storm filed timely notices of appeal from the orders and judgments of May 24, July 3, and July 22, 2019.

## DISCUSSION

Storm contends that the trial court's interpretation of the insurance agreement was erroneous.  We agree.  As we explain, the policy language providing that the arbitrator decides the legal entitlement of damages and the amount thereof, and also providing that "[e]ach party will . . . [p]ay the expenses it incurs; and [¶] . . . [b]ear the expenses of the arbitrator equally," did not limit Storm's ability under section 998 to recoup costs she incurred during the arbitration.  Nor did the insurance agreement limit her ability under section 1293.2 to recoup costs she incurred during the judicial proceedings to confirm the arbitration.

---

[2]     Section 1284.2 provides that "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."

1. *Governing Law on Arbitrations of Underinsured Motorist Claims and the Cost-Recovery Provisions of Sections 998 and 1293.2*

The Uninsured Motorist Act (Ins. Code, § 11580.2 et seq.) requires auto insurance policies to provide underinsured motorist coverage for motorists whose liability insurance is less than the limits carried on the injured motorist's insurance plan. (*Id.*, § 11580.2, subd. (p)(2).)

Coverage disputes for underinsured motorists are subject to contractual arbitration. (Ins. Code, § 11580.2, subd. (f).) Absent language in the insurance agreement expanding the issues to be arbitrated (*Rangel v. Interinsurance Exch.* (1992) 4 Cal.4th 1, 11), underinsured motorist arbitrations contemplate only two issues— "whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof." (Ins. Code, § 11580.2, subd. (f).) In this context, the term "damages" refers to the amount of damages the insured is entitled to recover from the underinsured motorist; "'it does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured.'" (*Weinberg v. Safeco Ins. Co. of America* (2004) 114 Cal.App.4th 1075, 1082 (*Weinberg*), italics omitted, disapproved on another ground in *Barnett v. First National Ins. Co. of America* (2010) 184 Cal.App.4th 1454; accord Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2019) ¶ 6:2416.1, p. 6G-71.)

Because underinsured motorist arbitrations are contractual in nature, the parties to an underinsured motorist insurance agreement may contract for their own division of arbitration costs consistent with the California Arbitration Act (CAA) (§ 1281 et seq.). Section 1284.2 of

8

the CAA provides that "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator . . . not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."  (Accord, *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1815 (*Austin*) [section 1284.2 "sets forth the legislative policy of this state that arbitration costs are to be borne by the party incurring them, unless the arbitration agreement provides otherwise"].)

However, the application of section 1284.2 to underinsured motorist arbitrations is not inconsistent with applying the cost-shifting provisions of section 998 for recovery of costs incurred during the arbitration.  (*Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 142 (*Pilimai*) ["We . . . conclude that an uninsured motorist arbitration pursuant to Insurance Code section 11580.2 is an 'arbitration' within the meaning of Code of Civil Procedure section 998 and subject to the latter statute's cost-shifting provisions"].)

Section 998 provides:  "(b) Not less than 10 days prior to commencement of trial or arbitration . . . of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time.  [¶]  . . .  [¶]  (d)  If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award . . . , the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert

9

witnesses . . . in addition to plaintiff's costs." The other cost-shifting provision at issue in this case, section 1293.2, provides that "[t]he court shall award costs upon any judicial proceeding under" the CAA to confirm, correct, or vacate an arbitration award. (See *Austin, supra,* 16 Cal.App.4th at pp. 1815–1816) ["the Legislature has distinguished between costs incurred in an arbitration proceeding and costs incurred in superior court to enforce an arbitration award"].)

2. *Recoupment of Costs Incurred During Arbitration*

We consider first whether the policy prohibits Storm from recovering the costs of arbitration under section 998.

To determine the meaning of the insurance agreement, we review it de novo and adhere to well-established rules of contract interpretation. (*The Ratcliff Architects v. Vanir Construction Management, Inc.* (2001) 88 Cal.App.4th 595, 602 (*Ratcliff Architects*).) The rules of contract interpretation "'are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.,* § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id.,* § 1644), controls judicial interpretation. (*Id.,* § 1638.)'"

10

[Citation.]" (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1378 (*Ameron*).)

"An insurance policy provision is ambiguous when it is susceptible of two or more reasonable constructions. [Citation.] If ambiguity exists, however, the courts must construe the provisions in the way the insurer believed the insured understood them at the time the policy was purchased. (Civ. Code, § 1649.) In addition, if, after the court evaluates the policy's language and context, ambiguities still exist, the court must construe the ambiguous language against the insurer, who wrote the policy and is held '"responsible"' for the uncertainty. [Citation.]" (*Ameron, supra,* 50 Cal.4th at p. 1378.) We will not to add a term to an agreement about which it is silent. (*Ratcliff Architects, supra,* 88 Cal.App.4th at p. 602; see Civ. Code, § 1641.)

Here, by their plain meaning, the relevant provisions of the insurance agreement do not limit Storm's ability to recover costs under section 998. The policy language provides that each party shall "pay" its own arbitration expenses and shall "bear" the expense of the arbitrator equally. The word ""Pay" is defined as "money [given] in return for goods or services rendered.""" (*Ferra v. Loews Hollywood Hotel, LLC* (2019) 40 Cal.App.5th 1239, 1247, fn. 4, quoting American Heritage Dict. (4th ed. 2000) p. 1291; see *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 29 [courts utilize dictionaries to ascertain ordinary meaning of words].) The word "Bear" is defined as: "To hold up; support. . . . To be accountable for." (American Heritage Dict. (2d College ed. 1985) p. 164.) The plain meaning of these terms makes

11

clear that the parties agreed, in the first instance, to pay their own arbitration expenses and to be equally accountable for the arbitrator's fee. But these terms say nothing about limiting the statutory right to recover those expenses under sections 998's cost-shifting provisions. (See *Ratcliff Architects, supra,* 88 Cal.App.4th at p. 602 [courts will not add terms as to which the insurance agreement is silent].)

Moreover, to the extent there is any ambiguity (there is not), we note that both parties have agreed that the provisions were designed to mirror section 1284.2's default rule for payment of arbitration costs— that is, absent a contrary agreement, arbitration costs are to be borne by the party incurring them.[3] But, as case law makes clear, section 1284.2 provides only for the equal payment of arbitration costs; it does not limit a party's ability to recover those costs under section 998. (See *Pilimai, supra,* 39 Cal.4th at p. 150 ["section 1284.2 does not conflict with . . . section 998, subdivision (d)'s authorization of arbitration plaintiffs under appropriate conditions to obtain costs incurred for their own benefit"].) Thus, interpreting the policy in accordance with the reasonable expectations of both parties at the time they executed the agreement (*Ameron, supra,* 50 Cal.4th at p. 1378), the agreement does not forbid Storm from recovering the costs of arbitration under section 998.

---

[3] Standard Fire has not suggested that it harbored a different expectation. Indeed, it has conceded in its appellate brief that "the parties' arbitration agreement . . . , consistent with section 1284.2, expressly states that each party pays the expenses it incurs in arbitration."

3.    *Storm Was Not Required to Request Costs from the Arbitrator*

We now consider which decision-maker—the arbitrator or the trial court—is required to rule on Storm's request for arbitration expenses under section 998. Relying on *Heimlich, supra,* 7 Cal.5th 350, Standard Fire asserts that Storm cannot recover costs because she failed to request them from the arbitrator. However, *Heimlich* and the decisions on which it relied were dictated by the broad powers given to the arbitrator by language of the arbitration agreements at issue. Because the arbitration provisions of the policy at issue here are more limited (submitting only the questions of entitlement to damages and the amount thereof to the arbitrator), *Heimlich* is inapposite.

In *Heimlich*, an engineer hired an attorney pursuant to a representation agreement that provided for arbitration "of all disputes, including those involving legal fees." (*Heimlich, supra,* 7 Cal.5th at p. 357.) After the attorney sued the engineer for $125,000 in outstanding legal fees, the engineer made two section 998 offers to compromise ($30,001 and $65,001, respectively), which the attorney did not accept. (*Ibid.*) When the parties submitted the claims to arbitration, each party requested costs, thus "placing that issue squarely before the arbitrator." (*Ibid.*) The arbitrator awarded $0 to either party and directed that "'each side will bear their own attorneys' fees and costs.'" (*Ibid.*) Days later, the engineer notified the arbitrator of the section 998 offers and requested costs as the prevailing party. (*Ibid.*) The arbitrator replied that it no longer had jurisdiction to take

13

any further action. (*Ibid.*) When the engineer filed a memorandum of costs alongside a motion to confirm the arbitration award, the trial court refused to add costs because the engineer did not request them from the arbitrator. (*Ibid.*)

The Supreme Court agreed with the trial court's ruling because the parties' conduct placed the issue of costs before the arbitrator. "Arbitration is a matter of consent. [Citation.] Consequently, whether an arbitrator or court should allocate costs depends on the parties' agreement, which defines the scope of the arbitrator's power. [Citation.]" (*Heimlich, supra*, 7 Cal.5th at p. 358.) "If the parties' agreement does 'not limit the issues to be resolved through arbitration, the issue of [a party's] entitlement to . . . costs, as requested in his complaint, [is] subject to determination in the arbitration proceedings.' (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 706 [(*Corona*)]; see *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 776 [(*Moshonov*)]; *Maaso v. Signer* [(2012)] 203 Cal.App.4th [362,] 377 [(*Maaso*)].)" (*Ibid.*) Finding the parties' agreement to be "broad" by committing "the parties to arbitrate 'all disputes or claims of any nature whatsoever,'" the court found that the engineer was "required to request costs from the arbitrator in the first instance. Failure to do so would have precluded relief." (*Ibid.*)

The cases on which *Heimlich* relied also dealt with broad agreements and stipulations to arbitrate. (See *Corona, supra*, 107 Cal.App.4th at p. 706 [notice of contractual arbitration provided that "'[t]he subject contract calls for disputes to be settled by binding

14

arbitration'"]; *Moshonov, supra,* 22 Cal.4th at p. 774 [contract called for arbitration to "'enforce the terms of this contract or any obligation herein,'" the stipulation to arbitrate agreed to have the Rules of Court govern the arbitration, and the award provided an award of costs for unspecified amount]; *Maaso, supra,* 203 Cal.App.4th at p. 377 [submission to arbitration and award "included the issue of costs and interest"].)

In this case, the parties' agreement to arbitrate is quite limited.[4] Using the language set forth in section 11580.2 of the Insurance Code, the arbitration provisions in the insurance agreement narrowed the arbitrator's power to the determination of two specific issues: "Whether [Storm] is legally entitled to recover damages under this coverage," and "the amount of damages." (Compare Ins. Code, § 11580.2, subd. (f); see *Weinberg, supra,* 114 Cal.App.4th at p. 1082.) Unlike *Heimlich* and the authorities on which it relied, the language of the arbitration agreement here strictly circumscribed the arbitrator's powers. (See *Weinberg, supra,* at p. 1082, italics omitted [when an insurance agreement restates section 11580.2's statutory language, "'arbitration is limited to issues relating to liability of the uninsured motorist to the insured . . . ; it does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the

---

[4]    *Heimlich, Moshonov,* and *Maaso* considered the parties' stipulation and/or submission to arbitration to ascertain the arbitrable issues in those cases. The appellate record in this case does not include the party's stipulation or submission to arbitrate Storm's underinsured motorist claim.

15

insured'"].) Because the arbitrator was expressly granted the authority only to determine liability and damages—and no other issues or disputes—*Heimlich* does not apply here.

In short, the arbitrator's powers were expressly limited, and did not give the authority to rule on Storm's requests for arbitration costs under section 998. Hence, Storm was not required to request those costs from the arbitrator, and the proper forum to hear her request is the trial court that confirmed the arbitration award.

4.      *Recoupment of Costs Incurred During Judicial Proceedings*

Storm contends that the trial court erred in relying on the same policy language providing for the division of arbitration costs to deny Storm's request to recover costs she incurred during the judicial proceedings to confirm the arbitration award. In its briefing on appeal, Standard Fire does not dispute the contention, and we conclude that the contention is well-taken.

Unless the arbitrator's award or the parties' arbitration agreement negates the enforceability of section 1293.2, a court must award costs incurred in post-arbitration judicial proceedings to confirm, vacate, or modify an arbitration award. (*Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 260–261; see *Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 513 [award of costs pursuant to section 1293.2 is "mandatory"]; *Corona, supra,* 107 Cal.App.4th at p. 707 [same].)

16

Having reviewed the entire insurance agreement in this case, we find no provision placing a limitation on the payment of, or the right to recover, post-arbitration costs incurred to confirm, vacate, or modify the arbitration award. (See *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 454 ["An insurance policy must be interpreted as a whole and in context"].) The only provision remotely susceptible of such an interpretation—that each party "Pay the expenses it incurs"— appears under the heading "ARBITRATION" (and mirrors section 1284.2, which we have already discussed provides for the division of arbitration costs). That provision does not appear under the separate heading in the insurance agreement entitled "LEGAL ACTION AGAINST US." Thus, because neither the insurance agreement nor the arbitrator's award negated the enforceability of section 1293.2, the court erred in refusing to consider Storm's post-arbitration costs.[5]

//
//
//
//
//
//
//

---

[5] In light of our conclusions, we do not address Storm's alternative contentions that the policy language should be void as adhesive and against public police.

17

## DISPOSITION

The order granting the motion to tax costs and striking Storm's memorandum of costs is reversed.  The matter is remanded with directions for the trial court to consider whether the costs as claimed by Storm are recoverable and necessarily incurred within the meaning of sections 998 and 1293.2.  Storm shall recover her costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

18